(157 P.3d 631)
No. 96,319

JAMES LUDLOW, *Appellant,* v. STATE OF KANSAS, *Appellee.*

Opinion filed April 20, 2007.

*David J. Brown* and *Sally D. Pokorny*, of The Law Offices of David J. Brown, LC, of Lawrence, for appellant.

*Jared S. Maag*, deputy attorney general, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., MALONE and HILL, JJ.

HILL, J.: This appeal arises from the district court's denial of habeas corpus relief to James Ludlow. Ludlow filed a K.S.A. 60-1507 motion on the last day it could be filed, presenting three general grounds for relief. His claims included ineffective assistance of both trial and appellate counsel, failure of the State to produce exculpatory evidence, and a sheriff's report that depicted a domestic dispute between the victim and his girlfriend. The district court dismissed as time barred several additional claims of ineffective assistance that were first raised in Ludlow's trial brief, filed 14 months after Ludlow's K.S.A. 60-1507 motion was filed.

We uphold that dismissal because a motion filed under K.S.A. 60-1507 is a pleading that is a subset distinct from ordinary civil petitions. As required by statute and Supreme Court Rule, such a motion must contain *all* of the grounds for relief. Since the statute of limitations for this type of relief had expired in his case, Ludlow could not subsequently amend his motion and have it relate back to the day his original motion was filed. We also hold that there is substantial evidence in the record that supports the district court's conclusion that Ludlow received effective assistance from his trial and appellate counsel. Furthermore, Ludlow has failed to show that his defense was prejudiced by not having the sheriff's report because extensive evidence of the violent relationship between the victim and his girlfriend was presented at trial. Finally, we conclude the trial court did not err while ruling on this motion when it adopted the facts of the underlying crime of conviction as stated in our Supreme Court's ruling in the direct appeal. We affirm.

### Underlying Criminal Conviction and Prior Proceedings

Ludlow was found guilty of murder in the second degree, attempted murder in the first degree, and theft. He was sentenced to a controlling term of 25 years to life imprisonment in May 1993. Ludlow appealed his convictions to the Supreme Court, arguing that the district court erred in instructing the jury regarding voluntary intoxication. The Supreme Court rejected Ludlow's claim

and affirmed his convictions. *State v. Ludlow*, 256 Kan. 139, 883 P.2d 1144 (1994). The facts of the crimes were recounted in detail by the Supreme Court in Ludlow's direct appeal and need not be repeated here.

Greatly condensed, the case history reveals that the charges arose from a homicide in Douglas County where Tracy Robbins was shot and killed, and his girlfriend, Valerie Hartley, was shot and injured. Hartley identified Ludlow, a roommate of Robbins and Hartley, as the shooter. The State claimed that Ludlow committed the crimes with Robbins' .30-06 caliber rifle. At trial, Ludlow primarily asserted a voluntary intoxication defense. Ludlow testified that shortly before the shootings, he consumed approximately 17 shots of whiskey and some beer; consequently, he had no memory of the shootings. Despite that, Ludlow also suggested that Hartley committed the crimes.

On June 30, 2004, Ludlow filed a motion under K.S.A. 60-1507 alleging that he was denied effective assistance of counsel both at trial and in his direct appeal. That was the last day he could file such a motion. In the motion he listed eight allegations of ineffective assistance of trial counsel. Ludlow focused on trial counsel's investigation deficiencies; failure to retain an expert to examine the bullet casings, slugs, and fragments; failure to request a new trial upon the discovery of misplaced evidence; and failure to follow up on the results of ballistic testing. Moving on, Ludlow made three allegations of ineffective assistance of appellate counsel, focusing on appellate counsel's failure to raise an ineffective assistance claim on appeal; failure to request a new trial upon the discovery of misplaced evidence; and failure to follow up on the results of ballistic testing.

The district court received evidence on Ludlow's motion. Ludlow called a number of witnesses at the hearings, including his trial counsel, Harry Warren. Warren testified that after he was appointed to represent Ludlow, he met with the prosecutor, reviewed police reports, and met with Sheriff Loren Anderson. Warren met with Ludlow on numerous occasions and interviewed several additional witnesses. Warren also reviewed evidence in police custody and visited the crime scene shortly before trial.

In addition, Warren testified that Ludlow had very little memory of what occurred, and the State had a strong case against him. After consulting with Ludlow, Warren concluded that the facts of the case supported an intoxication defense. Warren believed that an intoxication defense was the most effective way to minimize Ludlow's exposure to the maximum penalty. Accordingly, Warren located a psychiatrist to testify at trial regarding the effects of Ludlow's alcohol consumption.

Further support for Ludlow's position came from the testimony of Mike McCaffrey, a retired police detective who was hired by Ludlow's brother to conduct a private investigation. McCaffrey was asked to determine whether any bullets remained at the scene of the crime, Robbins' home. McCaffrey testified that no bullets were found, but Detective Don Crowe from the Douglas County Sheriff's Office had shown him the remains of three bullets in Crowe's office on April 10, 1993. Crowe believed that the bullets were discovered in Robbins' home.

Numerous records were also admitted at the hearings. One of the documents was an evidence list prepared by Crowe on November 22, 1992. The list detailed the evidence that was in police custody, which included the following: a Browning .30-06 gun; a .30-06 shell casing; a live .30-06 round; a bullet casing; a bullet jacket and bullet fragments from the downstairs bedroom; a bullet fragment; and crown molding with a bullet fragment.

All of the ballistics items were sent to the Kansas Bureau of Investigation (KBI) in May of 1994 for testing. The KBI reported the results of their examination indicating that the fragments and bullets "retained insufficient individual characteristics to determine if they were fired by the Browning 30-06 rifle." The KBI concluded that "[t]he results of these examinations were inconclusive." On the other hand, the KBI did conclude that the two .30-06 cartridge cases were fired by the Browning rifle. The ballistic items were forwarded to the Bureau of Alcohol, Tobacco, and Firearms (ATF) for further testing. The ATF concluded that because the fired shell casings were from different manufacturers than the live round, "no further comparative analyses are warranted."

Going on, Cecilia Wood, a private investigator retained for Ludlow, also testified. She stated that she had observed bullet fragments which were in police custody. Although Wood admitted she was not a ballistics expert and conducted no tests, she suggested that the newly discovered fragment appeared to be a .22 caliber bullet.

Ludlow also presented deposition testimony of Lester W. Roane, a ballistics expert. Roane was retained to examine the bullet fragments and determine "to what extent they were consistent with having been fired from a thirty ought six or other gun." After conducting his examination, Roane concluded that the items consisted of the following: one unfired .30-06 cartridge; two fired .30-06 cartridges; one large .30 caliber bullet fragment with diameter and class marks that were consistent with some .30-06 caliber bullets; two bases from .30 caliber bullets with class marks matching the large .30 caliber bullet fragment but not enough individual marks to match with each other or a specific firearm; and four items that were too small and too damaged to be of any particular value in matching them to a firearm. Roane thought the newly discovered fragment was a lead core from a jacketed bullet that could have come from one of several different calibers of handguns and rifles, but it was not fired from a .22 caliber firearm.

Continuing in his deposition, Roane testified that several of the items appeared to be bullet fragments, but he could not definitively determine what they were. Roane summarized his conclusions regarding the remainder of the items:

"I determined that certainly some of them were fired in the thirty ought six, the two fired cartridge cases. There was one unfired cartridge that was also in caliber thirty ought six. I found that some of the bullets and fragments could have been fired in [a] thirty ought six. They were consistent with having been but since I had no evidence gun to compare it to, I couldn't say definitively that it was or wasn't fired from a thirty ought six."

Another expert, Dr. Gary L. Baker also testified. Baker treated Hartley after the shooting. He thought that, based on Hartley's gunshot wound, she was shot with a small bullet with a low velocity. In his opinion, the wound was caused by a handgun instead of a rifle. But Baker admitted that he had no expertise in determining

bullet calibers. On cross-examination, Baker acknowledged that Hartley may have been shot with a .30-06 caliber bullet.

Ludlow also presented the testimony of Dr. Edward Friedlander, a pathologist. Friedlander reviewed several documents, including Tracy Robbins' autopsy report, Baker's surgical records of Hartley, the crime scene diagram, and a report from an interview of Hartley. Based on the entry and exit wounds described in Robbins' autopsy, Friedlander questioned the accuracy of the report and the position Robbins was in when he was shot. However, on cross-examination, Friedlander admitted that the documents he was provided were confusing and he could not state that Hartley's testimony was inaccurate.

Finally, Ludlow presented the testimony of Edward Collister, an attorney. After reviewing Ludlow's case files and listening to the evidence presented at the K.S.A. 60-1507 hearings, Collister concluded that the representation provided by Ludlow's trial counsel was deficient and Warren's representation put Ludlow's conviction in question. Collister believed that trial counsel should have done a more thorough investigation, and he questioned counsel's failure to interview witnesses, failure to seek a ballistics expert, and decision to present just one defense at trial.

For its part, the State presented the testimony of Dr. Erik Mitchell, a forensic pathologist. Mitchell reviewed crime scene photographs and various documents, including Baker's affidavit and notes regarding Hartley's surgery. Mitchell testified that Baker's conclusions were not accurate. Mitchell noted that Baker does not "understand the injury potential of various firearms and mistakenly believes that he is able to establish [the] caliber of a weapon from the injury, which is simply not possible." Mitchell testified that injuries are dependent upon the amount of energy transferred by a projectile. Mitchell ultimately concluded that Hartley was injured by a projectile with a large amount of energy, not a bullet with a low velocity and small caliber.

After the conclusion of testimony, Ludlow and the State filed briefs and presented their arguments. In Ludlow's brief, he relied on the claims raised in his K.S.A. 60-1507 motion but also asserted for the first time nine new claims. They included the State failed

to produce bullets; the State failed to produce a police report; trial counsel had a financial conflict of interest; trial counsel encouraged the jury to find Ludlow guilty; trial counsel introduced evidence of Ludlow's prior convictions; trial counsel failed to object to prosecutorial misconduct; and the cumulative effect of trial counsel's errors required reversal.

In response, the State objected to the new claims, arguing they were made out of the time permitted by the law.

Subsequently, the district court held that Ludlow's new claims were untimely and not properly before the court. The court also concluded that Ludlow's trial and appellate counsel were not ineffective and that Ludlow was not entitled to relief.

### *Untimely Claims*

This issue requires this court to interpret K.S.A. 60-1507. An appellate court has unlimited review over the district court's interpretation of a statute. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

According to K.S.A. 60-1507(f) motions must be filed within 1 year of the date of the final order in the underlying direct criminal proceedings. But where a movant's direct criminal appeal was complete before K.S.A. 60-1507(f) became effective on July 1, 2003, as is the case here, a criminal defendant seeking redress under K.S.A. 60-1507 had until June 30, 2004, to file his or her motion. See *Hayes v. State*, 34 Kan. App. 2d 157, 162, 115 P.3d 162 (2005).

The district court properly held that Ludlow's K.S.A. 60-1507 motion was timely filed. It was filed on the last possible day as recognized in *Hayes*. But the court concluded that the new claims Ludlow raised in his brief were untimely. The court noted that ordinarily, under K.S.A. 60-215(c), amendments to a pleading relate back to the date of the original pleading when the claims arise out of the same conduct, transaction, or occurrence. But, in this instance, the court held that the new claims were unrelated to the claims raised in the original motion, and, therefore, they were untimely.

Ludlow's direct appeal was concluded by November 30, 1994, when the district court received the Supreme Court's mandate.

His K.S.A. 60-1507 motion was filed on June 30, 2004. More than a year later, Ludlow's trial brief was filed on September 9, 2005. The new claims raised in the brief were not asserted within the 1-year filing limitation.

K.S.A. 60-1507 relief is brought to life by Supreme Court Rule 183 (2006 Kan. Ct. R. Annot. 227), the rule that contains the procedures that implement the statute. The rule describes not only the nature of the remedy but prescribes how and when it may be invoked. Subsection (e) states that "[a] motion to vacate a sentence shall be deemed sufficient if in substantial compliance with the form set forth by the judicial council." 2006 Kan. Ct. R. Annot. 228. That form, at paragraph 10 commands: "[S]tate concisely *all the grounds* on which you base your allegation that you are being held in custody unlawfully." (Emphasis added.)

While reviewing a similar provision, the Supreme Court, in a case dealing with the prior manifestation of the rule (Rule 121 then) held that it was necessary to presume that a movant had listed all of the grounds for relief upon which he was relying.

"To hold otherwise would mean that successive motions, each setting out a different and additional ground, could be filed indefinitely—contrary to the obvious intent and meaning of subdivision (c) of the statute . . . and of division (d) of [the rule] [both provide that the court shall not be required to entertain a second or subsequent motion for similar relief.]" *Smith v. State* 195 Kan. 745, 747, 408 P.2d 647 (1965).

Our statute, K.S.A. 60-1507(c), and Rule 183(d) contain identical prohibitions against entertaining second or subsequent motions.

Even though K.S.A. 60-1507 motions are civil actions, as a pleading, they make up a subset distinct from ordinary civil petitions. By statute and rule they must contain all perceived grounds for relief unlike the notice pleadings found in most civil petitions. Furthermore, these cases are collateral attacks upon completed criminal proceedings. That means ordinarily in these types of cases there is no pretrial discovery that creates the need to amend pleadings to include new grounds for relief as discovery often causes in other civil cases.

The tandem requirements of mandatory inclusion of all alleged grounds for relief coupled with the prohibition against hearing sub-

sequent motions, found in this rule and statute, block the filing of a successive motion. With no ability to amend or supplement a 60-1507 motion, the "relation-back" doctrine found in K.S.A. 60-215(c) is inoperative here. Also the intervention of the statute of limitations here prohibits any subsequent motions for relief. To rule otherwise would abrogate the holding in *Smith*. The district court was correct. The attempted amendment to include new theories or grounds for relief found in Ludlow's trial brief were time barred.

Nonetheless, Ludlow contends the district court erred in failing to allow the K.S.A. 60-1507 motion to be amended to assert the new claims, relying on K.S.A. 60-215(b). That statute provides, in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Ludlow suggests the new claims were "tried to the court without objection" at the 60-1507 hearings.

We are not convinced that is so. Ludlow fails to cite any portion of the record to show that these claims were tried by consent. " 'An appellant has the duty to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails.' [Citations omitted.]" *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 172, 61 P.3d 687 (2003); *Fletcher v. Nelson*, 253 Kan. 389, 392, 855 P.2d 940 (1993) (K.S.A. 60-1501 case). Ludlow's contention fails in the absence of support in the record on appeal.

Our review of the record reveals that the evidence Ludlow relies on to support his new claims was clearly presented at the K.S.A. 60-1507 hearings to support the ineffective assistance claims he raised in the motion. No arguments were presented at the hearings, and the new claims were not actually asserted until Ludlow filed his trial brief. The State promptly filed a response to Ludlow's brief and objected to the new claims. Under these circumstances, there is no basis to conclude that these issues were tried by consent. Accordingly, Ludlow fails to establish the district court erred in denying these claims as untimely.

## Exculpatory Evidence

Next Ludlow contends the State withheld an exculpatory sheriff's report. Generally issues of this kind are controlled by *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), where the United States Supreme Court held: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

This ruling has been refined. Generally, there are "three components or essential elements of a *Brady* prosecutorial misconduct claim: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Banks v. Dretke*, 540 U.S. 668, 691, 157 L. Ed. 2d 1166, 124 S. Ct. 1256 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 144 L. Ed. 2d 286, 119 S. Ct. 1936 [1999]).

Exculpatory evidence "'tends to disprove a fact in issue which is material to guilt or punishment' of a defendant. [Citation omitted.]" *State v. Nuessen*, 23 Kan. App. 2d 456, 461, 933 P.2d 155 (1997). The failure to disclose such information under *Brady* warrants a reversal only if it is material. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome. *Haddock v. State*, 282 Kan. 475, 507, 146 P.3d 187 (2006).

Ludlow argues the State failed to turn over the sheriff's report prior to trial. The report concerned a domestic dispute arising about a month prior to the shooting, where Hartley hit and scratched Robbins. He claims the report was exculpatory because it showed that Hartley was violent towards Robbins and may have been the shooter, and it impeached her claim at trial that her fights with Robbins were not violent. Ludlow also claims he was prejudiced by the absence of the report:

"With this sheriff's report, Warren could have presented credible evidence to the jury that not only did Hartley have a hot temper and short fuse, but that she had blown up and injured Robbins in the past, that she was unhappy in the relationship and in fact had been told by the investigating officer to get out of the relationship if she was unhappy. That evidence would have been critical in Petitioner's defense."

The evidence was favorable to Ludlow because it impeached Hartley's trial testimony. But Ludlow fails to establish that the defense was prejudiced. At trial, extensive evidence was presented regarding the relationship of Robbins and Hartley. The evidence established that Hartley often argued with Robbins. On cross-examination, Hartley also admitted that she was occasionally violent towards Robbins and had struck him in the past.

Although Ludlow argues the report was critical to his defense, credible evidence was presented at trial supporting each of the issues raised by the report. Accordingly, we cannot conclude that the report possessed a reasonable probability of producing a different result at trial.

We also agree with the State when it argues this claim is not properly before this court. The State correctly points out the district court concluded that this claim was untimely. Ludlow argues, however, this issue should be addressed under K.S.A. 60-1507(f)(2). K.S.A. 60-1507(f)(2) provides that the 1-year time limitation set out in K.S.A. 60-1507(f)(1) "may be extended by the court only to prevent a manifest injustice." Although "manifest injustice" has not been defined in the context of K.S.A. 60-1507(f)(2), this court has interpreted the phrase in other contexts to mean "obviously unfair" or "shocking to the conscience." *State v. Cramer*, 17 Kan. App. 2d 623, 635, 841 P.2d 1111 (1992), *rev. denied* 252 Kan. 1093 (1993); *State v. Turley*, 17 Kan. App. 2d 484, Syl. ¶ 2, 840 P.2d 529, *rev. denied* 252 Kan. 1094 (1992).

Ludlow fails to establish a manifest injustice, and his claim is not properly before this court.

### Effective Assistance of Trial Counsel

Before deciding this issue, a review of the law concerning counsel effectiveness is important. When an evidentiary hearing has

been held by the district court, the standard of review for an appeal of a denial of a K.S.A. 60-1507 motion for ineffective assistance of counsel is whether the court's factual findings are supported by substantial competent evidence and whether those findings are sufficient to support the conclusions of law. *Jenkins v. State*, 32 Kan. App. 2d 702, 703, 87 P.3d 983, *rev. denied* 278 Kan. 845 (2004). Substantial competent evidence is "evidence . . . which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.]" *Griffin v. Suzuki Motor Corp.*, 280 Kan. 447, 459, 124 P.3d 57 (2005).

" 'Before counsel's assistance is determined to be so defective as to require reversal of a conviction, the defendant must establish two things. First, the defendant must establish that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel's performance was less than that guaranteed to the defendant by the Sixth Amendment to the United States Constitution. Second, the defendant must establish that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial.' " *State v. Davis*, 277 Kan. 309, 314, 85 P.3d 1164 (2004) (quoting *State v. Orr*, 262 Kan. 312, Syl. ¶ 1, 940 P.2d 42 [1997]).

"Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.] To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citation omitted.]" *State v. Betts*, 272 Kan. 369, 387-88, 33 P.3d 575 (2001).

The performance and the prejudice aspects of the ineffective assistance of counsel inquiry are mixed questions of law and fact requiring de novo review on appeal. *Easterwood v. State*, 273 Kan. 361, 370, 44 P.3d 1209, *cert. denied* 537 U.S. 951 (2002).

*Pretrial Investigation*

In his brief, Ludlow contends his trial counsel was ineffective because he did not conduct a pretrial investigation. Ludlow argues, "[b]ecause he had conducted no independent investigation, he had

no independent facts upon which to make an informed decision about a trial strategy, and because he waited until about two weeks before trial to prepare, he had very few options open to him." Ludlow alleges that counsel ignored evidence that Hartley was the only one with a possible motive for harming Robbins. Ludlow further claims that counsel did not understand the inconsistencies in the evidence, and he could have shown Hartley was "being less than candid."

It is clear that Ludlow here essentially challenges counsel's trial strategy. Decisions involving defense tactics or strategy are within the exclusive province of defense counsel after consultation with his or her client. Such decisions include what witnesses to call, whether and how to conduct cross-examination, and what motions to make. *State v. Carter*, 270 Kan. 426, 438-39, 14 P.3d 1138 (2000). But there are limitations upon this discretion. Defense counsel cannot make a strategic decision against a line of investigation when he or she has not obtained facts upon which the decision could be made. *Mullins v. State*, 30 Kan. App. 2d 711, 716, 46 P.3d 1222, *rev. denied* 274 Kan. 1113 (2002).

The district court found that Ludlow had failed to establish what further investigations would have revealed and that his claims were without merit. The court concluded that Ludlow's counsel conducted an adequate investigation and counsel was not ineffective. From our point of view, there is ample evidence that Warren conducted an adequate investigation prior to trial. In addition, there is no indication in the record that reveals what further investigations would have uncovered.

At the K.S.A. 60-1507 hearing, Ludlow's trial counsel, Warren, testified that after he was appointed to represent Ludlow, he immediately began work on the case. Warren met with the prosecutor, reviewed police reports, and met with Sheriff Loren Anderson. Warren met with Ludlow on numerous occasions, and he interviewed several additional witnesses. Warren also reviewed evidence in police custody, and he visited the crime scene shortly before trial.

Warren did not think there was much information suggesting that Hartley was the shooter, and he concluded that it was simply

not a plausible defense. Nonetheless, he did want the jury to consider the theory. Warren testified that during trial he suggested that Hartley could not be ruled out as the shooter, but he also presented the stronger intoxication defense. These were clearly options trial counsel would have to consider and decide.

*Bullet Investigation*

Ludlow also argues trial counsel conducted an inadequate investigation regarding the bullet fragments, and he contends: "If he had reviewed the physical evidence, including the bullet fragments and slugs in Det. Crowe's desk, he would have seen the need for an expert witness to conduct ballistics tests."

On the other hand, Warren testified at the K.S.A. 60-1507 hearings that he did, in fact, review the physical evidence. Moreover, Ludlow's contention overlooks the fact that Roane, a ballistics expert, did ultimately conduct ballistics tests, and his test results largely support the case the State presented against Ludlow. Ludlow also claims the need for ballistics testing is apparent based on Baker's conclusions regarding Hartley's injury. However, Mitchell testified that Baker's conclusions were inaccurate, and Mitchell concluded that Hartley was not injured by a bullet with a low velocity and small caliber. Furthermore, it appears from closing argument at trial, Warren's decision not to pursue this line of investigation was a tactical decision which enabled counsel to cast doubt on the State's theory at trial:

"The first question mark which you may have is that we have had a lot of evidence about this rifle before you, but there is no direct or specific evidence that it was, in fact, the murder weapon. We have no ballistics reports. We have no evidence in the form of actual bullets in front of you that you can take back to the jury room. All we have is a rifle that is in the middle of the hallway and some shell casings on the floor, but we don't have any evidence that the rifle itself was the one that shot the bullet that pierced Tracy's body. That is the first thing you need to think about here, whatever that means to you.

". . . There is no evidence indicating that any lab work was done on these bullets to show they came out of this gun. You heard evidence that they didn't recover bullets, so that kind of thing could have been done for you to help you make a decision here and it wasn't. That is not the defendant's job to put that evidence on. It's the State's job to come forward with evidence to convince you beyond a reasonable doubt, and if they don't put that evidence on, that is not the defendant's

problem. That is the State's problem because they have the burden of proof. We talked a whole lot in this case about the fact that the State has to carry the burden here and the defendant has no obligation under the law to prove anything to you. That is the first thing you need to think about."

Had Ludlow proceeded with the investigation and testing, a possibility existed at that time that the bullets might be consistent with the rifle, which would preclude this argument.

The district court's findings are supported by substantial competent evidence. The court correctly concluded that Ludlow's counsel was not ineffective.

### Effective Assistance of Appellate Counsel

Ludlow also argues the district court erred in concluding that he did not receive ineffective assistance from his appellate counsel.

The standard of review when examining a claim of ineffective assistance of appellate counsel is the same as ineffective assistance of trial counsel. Before appellate counsel's assistance requires reversal of a conviction, the appellant must establish (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the appellant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful. *Baker v. State*, 243 Kan. 1, 7, 755 P.2d 493 (1988).

The failure of appellate counsel to raise an issue on appeal is not, per se, ineffective assistance of appellate counsel. *Jenkins v. State*, 32 Kan. App. 2d 702, 704, 87 P.3d 983, *rev. denied* 278 Kan. 845 (2004). In *Baker*, our Supreme Court noted:

"In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit." 243 Kan. at 10.

There is little information in the record concerning the performance of Ludlow's appellate counsel, and Ludlow fails to establish appellate counsel was deficient. The record indicates Ludlow's no-

tice of appeal was filed on May 26, 1993. The district court entered an order appointing counsel for Ludlow's direct appeal on June 14, 1993. In May 1994, appellate counsel sent a letter to the assistant district attorney inquiring about the status of the ballistics tests. The assistant district attorney responded to the letter, stating that the district court granted the order for temporary release of evidence on April 26, 1994, and the ballistics evidence was sent to the KBI on May 10, 1994. The results of the KBI's investigation were sent to appellate counsel on July 22, 1994. The Supreme Court's decision was filed on October 28, 1994. Appellate counsel did not testify at the K.S.A. 60-1507 hearing, and there is simply no indication in the record that appellate counsel was deficient.

Nevertheless, Ludlow argues his appellate counsel was ineffective because he failed to raise an issue on appeal regarding the State's failure to turn over "three slugs" at trial. Ludlow claims the bullets were exculpatory because the testimony of Roane, "when combined with the testimony of Dr. Baker and others, that Hartley's wound was not consistent with being shot by a .30.06 bullet, leads to the conclusion there were either two shooters in the house on the night in question, or there were two different guns used."

Ludlow also claims he was prejudiced by the State withholding the slug. The withheld evidence would have prompted a reasonable person to investigate further. He reasons that such an investigation would have shown the slug was exculpatory.

Ludlow's arguments are not supported by the record. Although he claims three bullets were withheld by the State, the record only indicates that one bullet was misplaced and the other ballistics evidence was placed in police custody. It was Ludlow's burden to designate a record showing error, and without such a record his claim is without merit. See *Alivio*, 275 Kan. at 172.

Ludlow continues with his suggestion that because one bullet looked slightly different from some of the other bullets, it was exculpatory and he was prejudiced. Ludlow points out that Wood, who had no ballistics expertise, believed the item was a .22 caliber bullet.

Such an argument regarding the appearance of the slug provides little basis to conclude that this evidence was exculpatory. Ludlow

does not show the defense was prejudiced. Ludlow ultimately suggests that based on the appearance of the bullet, a reasonable person would have conducted a further investigation and *that* investigation would have shown the bullet was exculpatory.

In fact, further investigations have since been conducted. Roane, the ballistics expert hired by Ludlow, did not conclude that the item was inconsistent with a .30-06 caliber bullet, and he noted that it was a lead core and it could have come from any one of a lot of handguns and rifles in several different calibers. However, it was not fired from a .22 caliber firearm. On cross-examination, Roane admitted that while the item appeared to be a small lead fragment, he was not certain that it was even a fired bullet. A ballistic investigation was also conducted by the KBI, and the results of that investigation were inconclusive. Had this ballistic investigation been performed prior to trial it would also have been inconclusive. In light of all the other evidence against Ludlow, it is impossible to say this item possessed a reasonable probability of producing a different result at trial.

Accordingly, Ludlow fails to establish that appellate counsel was deficient in failing to raise this claim on appeal. He also fails to show he was prejudiced by appellate counsel's actions. The district court's conclusion that Ludlow's appellate counsel was not ineffective is supported by substantial competent evidence.

## Repeating Supreme Court's Fact Recitation

Finally, Ludlow argues the district court erred in adopting the facts recognized by the Supreme Court in his direct appeal. In its memorandum decision, the district court extensively quoted the facts from the Supreme Court's opinion. Ludlow claims the district court ignored all of the evidence presented at the K.S.A. 60-1507 hearings, despite being required to consider the totality of the evidence before the judge or jury as directed by *State v. Orr*, 262 Kan. 312, Syl. ¶ 3, 940 P.2d 42 (1997). We do not think this is an error.

A district court is required to make findings of fact and conclusions of law on all issues presented when addressing a K.S.A. 60-1507 motion according to Rule 183(j) (2006 Kan. Ct. R. Annot.

227). Here, it is clear that the district court complied with Rule 183(j). The court filed a comprehensive 26-page memorandum decision which included findings of fact and conclusions of law on all issues presented as well as an adoption of the Supreme Court's factual recitation. The court thoroughly considered Ludlow's claims and the evidence presented at the K.S.A. 60-1507 hearings. There is no indication the court disregarded any evidence presented at trial.

Even though Ludlow challenges the district court's adoption of the Supreme Court's recitation of facts, the Supreme Court has also followed this practice. Such findings become a part of the law of the case. See *Haddock v. State*, 282 Kan. 475, 479-83, 146 P.3d 187 (2006) (reciting facts from defendant's direct appeal in an appeal from the denial of his K.S.A. 60-1507 motion). Ludlow simply fails to establish the district court erred in adopting the facts in its memorandum decision.

Affirmed.