(192 P.3d 1121)
No. 99,150

KIRK T. WILSON, *Appellant,* v. STATE OF KANSAS, *Appellee.*

Opinion filed August 22, 2008.

*Michael G. Jones,* of Leavenworth, for appellant.

*Rex L. Lane,* special prosecutor, and *Paul J. Morrison,* attorney general, for appellee.

Before RULON, C.J., GREEN and HILL, JJ.

GREEN, J.: Kirk T. Wilson appeals from a judgment of the trial court dismissing his K.S.A. 60-1507 motion as untimely. We hold that Wilson's initial 60-1507 motion was timely. Nevertheless, we determine that Wilson's amended 60-1507 motion was untimely. Finally, we determine that the trial court properly concluded that no manifest injustice would occur in failing to accept Wilson's amended 60-1507 motion. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

On April 24, 2001, Wilson was convicted by a jury of first-degree murder in violation of K.S.A. 1993 Supp. 21-3401. Wilson was sentenced to life without the possibility of parole for 25 years. Wilson filed a direct appeal of his conviction and sentence. Moreover, in pro se letters to the district court judge, Wilson explained that his appeal primarily involved the fact that he believed his trial attorney did not properly represent him at trial. After an attorney was appointed, our Supreme Court affirmed Wilson's conviction and sentence, finding sufficient evidence to support the conviction, finding that the prosecutor's closing argument did not improperly bolster the credibility of a witness or misstate the definition of reasonable doubt, and finding that Wilson invited any error regarding testimony suggesting a prosecution witness passed a polygraph examination. *State v. Wilson,* 281 Kan. 277, Syl. ¶¶ 1-4, 130 P.3d 48 (2006). The opinion was filed on March 17, 2006, and the mandate was issued on April 10, 2006.

In a letter dated March 5, 2007, Wilson wrote to the Atchison County District Court Clerk and requested to proceed in forma pauperis on a "petition for a writ of habeas corpus" under K.S.A. 60-1507. Wilson included his motion with the letter, and the dis-

trict court clerk filed only the letter with the court on March 19, 2007. That same day, the district court clerk wrote Wilson to explain that under K.S.A. 60-2001(b), Wilson was required to submit a statement of his prison account if he wanted to have the filing fee waived. The clerk notified Wilson that until the court had set the fee and there had been compliance, the motion could not be filed. The clerk further informed Wilson that she would hold the motion for no more than 30 days.

In a letter dated April 10, 2007, Wilson wrote to the district court clerk and included an in forma pauperis affidavit under K.S.A. 60-2001(b). Wilson also included a new K.S.A. 60-1507 motion that raised additional issues, and he asked the clerk to destroy the first motion. The district court clerk filed the letter with the court on April 12, 2007.

On April 17, 2007, the district court denied Wilson's motion to proceed in forma pauperis and set the filing fee for $147. The district court received Wilson's docket fee on May 7, 2007. That same day, the district court clerk wrote to Wilson and explained that, under Supreme Court Rule 123 (2007 Kan. Ct. R. Annot. 210), he was required to submit a civil information sheet before his motion could be filed. Later, when the district court clerk had received all the necessary paperwork, the clerk file-stamped the documents on May 14, 2007. Yet, it is not clear from the record whether the file-stamped motion was the original motion sent on March 5, 2007, or the amended motion sent on April 10, 2007.

On May 24, 2007, the State moved to dismiss, arguing that Wilson had failed to file his K.S.A. 60-1507 motion within 1 year, as required by statute, and that Wilson had failed to demonstrate manifest injustice. Wilson responded by arguing that no case had defined what constitutes "manifest injustice" for K.S.A. 60-1507 purposes. Moreover, he maintained that manifest injustice must be defined as extreme unfairness. As a result, Wilson argued that it was unfair to require him to file a motion based on knowledge he did not obtain until after the 1-year filing date had passed: that his trial counsel had been suspended from the practice of law on March 16, 2007. Wilson argued that this knowledge led him to believe his attorney had been ineffective in representing him.

After holding a hearing on the State's motion to dismiss, the district court dismissed the 60-1507 motion on August 15, 2007, finding that Wilson's motion had been filed past the 1-year time limitation and that Wilson had failed to show manifest injustice in the dismissal of his motion.

*Did the District Court Err by Dismissing Wilson's K.S.A. 60-1507 Motion as Untimely?*

When a district court is presented with a K.S.A. 60-1507 motion, it may determine the following: (1) that the record conclusively demonstrates that none of the movant's claims entitle the movant to relief and then deny the motion without appointing counsel or holding a hearing; (2) that the motion raises potentially valid claims, requiring a full evidentiary hearing in the presence of the movant; or (3) that the motion presents substantial fact issues and appoint counsel for a preliminary hearing to determine whether in fact the issues in the motion are substantial. *Bellamy v. State*, 285 Kan. 346, 353, 172 P.3d 10 (2007).

Here, the district court denied Wilson's motion after it had appointed counsel but before an evidentiary hearing. As a result, this court has unlimited review of the evidence presented to the district court. 285 Kan. at 354.

*Was Wilson's K.S.A. 60-1507 Motion Timely Filed?*

The district court granted the State's motion to dismiss Wilson's motion because it was filed beyond the 1-year limitation period under K.S.A. 60-1507(f), which states:

"(1) Any action under this section must be brought within one year of: (i) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (ii) The denial of a petition for writ of certiorari to the United States supreme court or issuance of such court's final order following granting such petition.

"(2) The time limitation herein may be extended by the court only to prevent manifest injustice."

Wilson first argues that the district court incorrectly determined that our Supreme Court's decision on March 17, 2006, was the deadline for Wilson to file his K.S.A. 60-1507 motion. Wilson argues that the district court should have found the deadline contin-

ued until 1 year after our Supreme Court had issued its mandate, which would have been April 10, 2007. Wilson further argues that the last date to file should have been April 11, 2007, because the mandate was not filed in Atchison County until April 11, 2007. In addition, Wilson argues that he should have been allowed to file his motion without paying a docket fee and that the filing date of his motion should have been considered timely. Wilson, however, provides no cases to support his arguments.

In response, the State argues that whether the district court had used the date when our Supreme Court affirmed Wilson's conviction or the date when our Supreme Court's mandate was issued is irrelevant. The State contends that Wilson's motion was not filed until May 14, 2007, when Wilson submitted the docket fee and civil cover sheet. Further, the State argues that just because Wilson filed pro se, it should not excuse his noncompliance with paying the docketing fee and submitting the civil cover sheet.

From the outset, we note that Wilson has failed to preserve for appeal any argument that the district court had improperly calculated his 1-year time requirement based on the date of the Supreme Court's opinion. For example, in his memorandum in opposition to the State's motion to dismiss, Wilson conceded that the "one year in which to bring this action expired on March 17, 2007." Further, at the dismissal hearing, Wilson made no mention of the requirement to calculate his 1-year deadline from the date the mandate had been issued. Generally, issues not raised before the trial court cannot be raised on appeal. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007); but see *Poulton v. State*, 286 Kan. 1, 5, 179 P.3d 1145 (2008) (failure to raise an issue in the trial court and failure to argue that any exceptional circumstances applied did not preclude appellant from raising the issue on appeal).

## Was Wilson's Original Motion Timely Filed?

Wilson's original K.S.A. 60-1507 motion was timely filed because Wilson mailed his motion on March 5, 2007. After Wilson appealed his conviction and sentence, our Supreme Court filed its opinion affirming Wilson's conviction and sentence on March 17, 2006. *Wilson*, 281 Kan. 277. In a letter dated March 5, 2007, Wilson

wrote to the Atchison County District Court Clerk and requested to proceed in forma pauperis on a "petition for a writ of habeas corpus" under K.S.A. 60-1507. The district court clerk filed the letter with the court on March 19, 2007.

By timely filing his motion under K.S.A. 60-206(d), Wilson gained the benefit of the "three-day mail rule" because the appellate clerk would have mailed our Supreme Court's decision to Wilson. Thus, Wilson would have had until March 20, 2007 to file his K.S.A. 60-1507 motion. Furthermore, Kansas courts have held that habeas petitions delivered to prison authorities for mailing constitute a filing if done under the time limitations outlined in relevant statutes. See, *e.g.*, *Taylor v. McKune*, 25 Kan. App. 2d 283, 286-88, 962 P.2d 566 (1998). The rationale to allow pro se prisoners leeway in mailing their habeas petitions under K.S.A. 60-1501 applies equally to motions filed under K.S.A. 60-1507:

" 'Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation . . . Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay.' " *Taylor*, 25 Kan. App. 2d at 286-87 (quoting *Houston v. Lack*, 487 U.S. 266, 271, 101 L. Ed. 2d 245, 108 S. Ct. 2379 [1988].)

Because Wilson timely filed his first motion, we must determine if Wilson's failure to provide a docket fee or an appropriate affidavit under K.S.A. 60-2001(b) required the district court clerk to refuse to file his motion. Under K.S.A. 60-2001(a), no case may be filed or docketed without payment of a docket fee. Although K.S.A. 60-2001(b) provides an exception for individuals who are unable to pay a docket fee, the statute contains clear and direct requirements:

"In any case where a plaintiff by reason of poverty is unable to pay a docket fee, and an affidavit so stating is filed, no fee will be required. An inmate in the custody of the secretary of corrections may file a poverty affidavit only if the inmate attaches a statement disclosing the average account balance, or the total deposits, whichever is less, in the inmate's trust fund for each month in (A) the six-month period preceding the filing of the action; or (B) the current period of incarceration, whichever is shorter."

On March 5, 2007, Wilson mailed only a K.S.A. 60-1507 motion with no fee and no affidavit. Nevertheless, Wilson specifically

stated in his letter that he was enclosing a request to proceed in forma pauperis.

Although Wilson did not meet the requirements of K.S.A. 60-2001(b), he substantially complied with K.S.A. 60-2001(b) when he indicated in his letter that he wished to proceed in forma pauperis. Kansas courts have drawn distinctions between the failure to comply with technical procedural steps and substantive requirements when parties attempt to appeal. See, *e.g.*, *In re K-Mart Corp.*, 232 Kan. 387, 391-92, 654 P.2d 470 (1982); *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978); *Avco Financial Services v. Caldwell*, 219 Kan. 59, 61, 547 P.2d 756 (1976).

Our Supreme Court has held in multiple cases that "procedural deficiencies were not jurisdictional as long as the substantive statutory requirements to perfect an appeal were met." *K-Mart Corp.*, 232 Kan. at 391. Further, in *Avco Financial Services*, our Supreme Court held that the payment of a docket fee is not jurisdictional and should not affect the filing of a timely notice of appeal. 219 Kan. at 61-63. The court noted that the appellee had failed to show prejudice by the appellant's failure to pay a docket fee when the appellant sent the papers to the district court. Moreover, the court held that because the payment of the docket fee only affected the clerk and not an adverse party, it should not be regarded as jurisdictional and the appeal should be docketed when the notice of appeal was filed. 219 Kan. at 62-63.

Similarly, Wilson's payment of a docket fee or his compliance with K.S.A. 60-2001(b) is separate from the substantive statutory requirements for seeking habeas relief under K.S.A. 60-1507. Payment of a docket fee does not affect the State, and the State has not shown prejudice by Wilson's failure to pay a docket fee when he mailed his initial K.S.A. 60-1507 motion. Although K.S.A. 60-2001 contains mandatory language, the payment of a docket fee has been held to affect only the district court clerk and not the adverse party. Thus, a movant's failure to pay the docket fee is not jurisdictional, nor does the movant's failure to pay the docket fee require a district court clerk to reject filing the movant's K.S.A. 60-1507 motion. Besides, rather than holding a movant's motion until

he or she has paid the docket fee, a district court clerk should file the motion. This would allow the district court judge to dismiss the action if the movant later fails to pay the docket fee or fails to file a poverty affidavit in compliance with K.S.A. 60-2001(b).

*Does Compliance with Supreme Court Rule 123 Affect Timeliness?*

Next, we must determine if the district court clerk was correct to hold Wilson's documents until he submitted a cover sheet under Supreme Court Rule 123 (2007 Kan. Ct. R. Annot. 210), which states that "[e]ffective July 1, 2005, for the filing of all new cases, the clerks of the district courts shall require the submission of a cover sheet." When a district court's ruling hinges on an interpretation or application of Supreme Court Rules, appellate courts exercise independent appellate review. *Gerhardt v. Harris*, 261 Kan. 1007, 1010, 934 P.2d 976 (1997).

Our research has revealed no Kansas case in which a court has held that a district court clerk may hold a motion until a movant has complied with Supreme Court Rule 123. With this understanding, we draw comparisons to the earlier cases dealing with a movant's failure to pay a docket fee with a notice of appeal. Because Kansas courts have found that an appellant's failure to pay a docket fee was not jurisdictional and should not have prevented the appellant from docketing an appeal, we determine that the failure to include a cover sheet was not a substantive statutory requirement. Instead, it was a procedural deficiency that did not prejudice the State in any way. See, *e.g., K-Mart Corp.*, 232 Kan. at 391; *Walnut Valley State Bank*, 223 Kan. 459; *Avco Financial Services*, 219 Kan. at 61-63.

Clearly, like the duty to pay a docket fee, the cover sheet requirement affects only the district court clerk, not an adverse party, and does not prejudice the adverse party. In fact, the Office of Judicial Administration explained that the rule was enacted to provide consistency and to ease the path toward electronic filing. *New Supreme Court Rule Mandates Use of New Cover Sheets*, 74 J.K.B.A. 40 (2005). Like the docket fee requirement, Wilson's filing of a cover sheet under Supreme Court Rule 123 is separate from the substantive statutory requirements for seeking habeas relief

under K.S.A. 60-1507. Finally, while the State is correct that pro se civil litigants are held to the same procedural standards as represented parties, the State ignores Kansas cases that distinguish mere procedural deficiencies from substantive statutory requirements. Consequently, we determine that Wilson's failure to submit a civil cover sheet did not require the district court clerk to reject the filing of Wilson's 60-1507 motion.

### Did Wilson Timely File His Amended K.S.A. 60-1507 Motion?

Next, we must consider what date should have been used to calculate the 1-year limitation period based on Wilson's amended motion. If the 1-year limitation period commenced when our Supreme Court filed its opinion, Wilson cannot amend his original motion. Under *Ludlow v. State*, 37 Kan. App. 2d 676, 683-84, 157 P.3d 631 (2007), Wilson would not have been allowed to amend his K.S.A. 60-1507 motion to include new grounds for relief because the *Ludlow* court stated that the "relation back" doctrine in K.S.A. 60-215(c) did not apply in K.S.A. 60-1507 actions. Although it is not clear if Wilson raised new grounds for relief in his amended motion, Wilson stated that the amended motion "raises more issues." If, however, the 1-year limitation period commenced when our Supreme Court issued its mandate, Wilson's amended motion would have been timely filed.

In *Koch, Administratrix, v. Prudential Ins. Co.*, 205 Kan. 561, 562, 470 P.2d 756 (1970), our Supreme Court found that the judgment in a case of liability under an insurance contract was final "when the mandate of this court was spread of record in the district court." Furthermore, in *State v. Bloomer*, 197 Kan. 668, 674, 421 P.2d 58 (1996), our Supreme Court held that when the mandate was issued it "became a part of the judgment controlling in the conduct of any further proceedings in the case." Finally, in *State v. Prater*, 31 Kan. App. 2d 388, 393-94, 65 P.3d 1048 (2003), this court held that a defendant's previous conviction was final once the mandate became part of the judgment of the district court. Under this reasoning, the 1-year time requirement under K.S.A. 60-1507(f) would have started running when the mandate was issued.

Nevertheless, K.S.A. 60-2107 and Rule 8.03(f) and (i) (2007 Kan. Ct. R. Annot. 63) state that any decision of the Court of Appeals or Supreme Court denying review shall be final as of the date of the decision denying review and that the mandate shall be issued by the appellate clerk forthwith. Further, in *Tolen v. State*, 285 Kan. 672, 673, 675, 176 P.3d 170 (2008), our Supreme Court, in a K.S.A. 60-1507 appeal, found that the 1-year time limitation began when the judgment was finalized by the court's denial of the prisoner's petition for review, not from the date the mandate was issued. Finally, the 10th Circuit Court of Appeals follows this same reasoning and finds the 1-year limitation period to commence once there is a decision rejecting the appeal. See, *e.g., Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006).

Wilson did not file a petition for review or any postdecision motions. As a result, the judgment was finalized by our Supreme Court's decision on March 17, 2006. The substantive aspects of the case had been fully determined. Under this reasoning, Wilson's time limitation period would have commenced when our Supreme Court filed its opinion. As a result, Wilson's amended motion was untimely filed.

*Should the Untimeliness of Wilson's Amended K.S.A. 60-1507 Motion Be Excused Because of Manifest Injustice?*

Wilson made no mention of manifest injustice when he filed his motion. Rather, the first time Wilson argued manifest injustice was in response to the State's motion to dismiss. In Wilson's memorandum in opposition to the State's motion to dismiss, Wilson argued that it would be manifestly unjust to require him to file his motion before the 1-year limitation period expired because he did not know until after the deadline that his trial counsel had been suspended from practicing law. Further, Wilson argues on appeal that his claim of manifest injustice is preserved for appeal because he raised the issue at the dismissal hearing. Wilson provides no more supporting arguments or cases on appeal.

At the dismissal hearing, the State argued that Wilson's motion failed to mention any specific act of his trial attorney which demonstrated inefficient representation. On appeal, the State argues

that the district court was correct in finding that Wilson had failed to show manifest injustice because Wilson had not shown that rejecting his untimely appeal would result in obvious unfairness.

Our court has recognized, as have the parties, that "manifest injustice" has not been defined in the context of K.S.A. 60-1507(f)(2). Nevertheless, this court has applied the interpretation given to "manifest injustice" to mean "obviously unfair" or "shocking to the conscience" from other contexts to K.S.A. 60-1507 situations. See *Clemons v. State,* 39 Kan. App. 2d 561, 182 P.3d 730 (2008), slip op. at 9; *Cranford v. State,* 39 Kan. App. 2d 12, 15, 176 P.3d 972 (2008); *Ludlow,* 37 Kan. App. 2d at 686.

Wilson seems to argue that he received ineffective assistance of counsel because his trial attorney was suspended from practicing law approximately 6 years after he represented Wilson. In *In re Waite,* 283 Kan. 497, 153 P.3d 517 (2007), Michael Waite, Wilson's trial counsel, was disciplined for his violation of the Kansas Rules of Professional Conduct (KRPC) 1.5 (2006 Kan. Ct. R. Annot. 401) (fees), KRPC 1.15 (2006 Kan. Ct. R. Annot. 435) (safekeeping property), KRPC 1.16 (2006 Kan. Ct. R. Annot. 435) (terminating representation), and Kansas Supreme Court Rule 211(b) (2006 Kan. Ct. R. Annot. 284) (failure to answer to the formal complaint). The complaint involved a contract between Waite and a client from 2003. Although the opinion recognized that additional complaints had been filed against Waite, it specified that the parties acknowledged that none of the additional complaints involved " 'dishonesty or misuse of client money.' " Consequently, the parties resolved the cases in an informal manner. 283 Kan. at 499. Finally, although the disciplinary panel recommended a 1-year suspension, Waite admitted to having significant health problems that required more than 1 year to address and requested an indefinite suspension, which the Supreme Court imposed. 283 Kan. at 499-500.

Our Supreme Court has previously held that suspension itself does not constitute ineffective assistance:

"[U]nprofessional conduct by defense counsel which violates a disciplinary rule contained in the Code of Professional Responsibility [now Kansas Rules of Professional Conduct] does not constitute ineffective and inadequate counsel as a matter of law. It is simply one factor to be considered as a part of the totality of

the circumstances in making a judicial determination as to whether an accused has been provided representation by effective counsel." *State v. Wallace*, 258 Kan. 639, 646, 908 P.2d 1267 (1995).

In Wilson's pro se K.S.A. 60-1507 motion, he maintains that Waite provided ineffective assistance by failing to submit police reports, newspaper articles, and letters written by the State's witnesses into evidence and by failing to use police reports to cross-examine the State's witnesses. It is not clear why knowledge of Waite's later suspension would be needed before Wilson could file his K.S.A. 60-1507 motion. Wilson wrote letters to the district court judge while directly appealing his conviction and sentence in which he discussed his concerns with his attorney's representation. Wilson fails to explain why he had to wait until Waite faced disciplinary action to file his K.S.A. 60-1507 motion.

Furthermore, Wilson does not make any allegations that Waite set inappropriate fees, mishandled his property, or failed to be clear about the termination of his representation, which is the conduct discussed in the later disciplinary action. Therefore, the fact that Waite was later suspended from the practice of law was not information Wilson needed to have to make allegations that his trial attorney had been ineffective in his representation of him.

Indeed, Wilson's explanation for filing his 60-1507 motion after the 1-year limitation period is a *non sequitur,* which means it does not follow. There is no logical connection between Wilson's claim (he received ineffective assistance) and the premise (his trial attorney was suspended from practicing law approximately 6 years after he represented Wilson). The fact that Wilson's trial attorney was later suspended from practicing law based on disputes with former clients does not mean that his representation of Wilson was ineffective. Such a conclusion is completely unjustified by the premise.

Given these facts, the later violation of KRPC by Wilson's trial attorney did not constitute ineffective assistance of counsel as a matter of law. As a result, the district court properly determined that no manifest injustice had occurred.

Affirmed in part, reversed in part, and remanded for further proceedings.