NOT DESIGNATED FOR PUBLICATION

Nos. 116,214
116,495

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DETAVIUS COOPER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed August 25, 2017.
Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Stephen P. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*:  Detavius Cooper entered a plea agreement on January 4, 2016. After sentencing, Cooper filed a motion to withdraw his plea asserting, among other things, that his attorney, Shane Adamson, met with him infrequently and that Cooper did not knowingly or voluntarily enter the plea agreement. The district court denied Cooper's motion. On appeal, Cooper argues that the district court unconstitutionally used his prior juvenile adjudication to enhance his criminal history score and further alleges that the court abused its discretion when it denied Cooper's motion to withdraw his plea. We affirm.

1

In September 2014, the State filed a complaint against Cooper, charging him with: kidnapping, aggravated robbery, aggravated battery, aggravated burglary, aggravated assault, criminal use of a weapon, harassment by telecommunication device, domestic battery, criminal damage to property, and disorderly conduct. Cooper pled not guilty.

On January 4, 2016, Cooper entered a plea agreement with the State. In exchange for a plea of nolo contendere, the State agreed to file an amended complaint in which it charged Cooper with aggravated battery and making false information. The State also agreed to recommend a total prison term of 60 months. In return, Cooper agreed not to request a dispositional departure. Accompanied by Adamson, Cooper entered a formal plea before the district court that same day.

At the sentencing hearing held on March 21, 2016, the district court discussed the particulars of Cooper's prison sentence:

"THE COURT: .... Couple other things, Mr. Cooper. You probably know this from your prior experience, but as a convicted felon, you lose certain civil liberties. And the most consequential probably is your right to bear a firearm. You lose that for 10 years following your discharge from responsibility. So absent good time credit, you're looking at 60 months, which would be five years in prison, and two years of post-release supervision so that's seven years . . . Do you have any questions of me? Oh, one more thing. You say you want a day to report. What time do you want to report tomorrow?

"[COOPER]: 2:00 o'clock would be fine.

"THE COURT: 2:00 o'clock, it is.

"[COOPER]: Yes, sir.

"THE COURT: And you'll need to—

"[COOPER]: Your Honor, I want to take it to trial.

"THE COURT: Do what?

"[COOPER]: I want to take it to trial.

"MR. ADAMSON: He's withdrawing his plea is what he's indicating.

"[COOPER]: I'm going to withdraw my plea and take it to trial.

"THE COURT: Why is it that you want to take it—that you want to withdraw your plea? Mr. Cooper, you're listening to I assume your family in the audience?

"[COOPER]: Yes, my mother.

"THE COURT: Okay. Were you unaware when you came up here today that you were looking at a prison sentence?

"[COOPER]: Yes, sir. Yes, sir. It was a lot—I didn't understand a lot of stuff I feel like I was misrepresented on. I don't feel like my juvenile record has anything to do with—I know it's possible that it can be brought up, but like I don't feel like this has anything to do with—like my total record is clean. Like, Your Honor, like I don't feel like this has anything to do with any—with my adult record, my juvenile record. . . .

"THE COURT: All right, hold on for a minute. . . ."

After some discussion, Cooper decided to take the plea. The district court sentenced Cooper in accordance with the plea agreement to a total prison term of 60 months and 24 months' postrelease supervision.

On March 31, 2016, Cooper filed a motion to withdraw his plea. That same day, he also filed a notice of appeal "from any and all rulings and judgments of the District Court." The district court then held a hearing for Cooper's motion to withdraw his plea on May 2, 2016. After hearing testimony from both parties, the court denied Cooper's motion. Cooper timely filed this appeal.

*Prior juvenile adjudication*

On appeal, Cooper first contends the district court could not use his prior juvenile adjudication (from 2005) to enhance his criminal history score from I to D "unless it [was] put to a jury and proved beyond a reasonable doubt." Cooper argues that the district court's failure to do so violated his constitutional rights and resulted in an illegal sentence.

Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which appellate courts exercise unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

In its brief, the State offers both a statutory and constitutional response to Cooper's contentions. Regarding the former, the State embarks on a detailed analysis of the recent amendments to K.S.A. 2016 Supp. 21-6810 and concludes that these statutory updates should not apply retroactively to Cooper's case. This court's recent decision in *Parker v. State*, No. 115,267, 2017 WL 947821, at *2-4 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* May 4, 2017, supports the State's position. However, further analysis of this issue is unnecessary because Cooper does not raise it in his brief. Instead, Cooper focuses exclusively on the alleged violation of his Sixth and Fourteenth Amendment rights to the United States Constitution under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Citing *State v. Hand*, 149 Ohio St. 3d 94, 104-05, 73 N.E.3d 448 (2016), Cooper argues that because the juvenile code did not guarantee him the right to a jury trial at the time of his prior conviction, the district court's use of his juvenile adjudication to increase his criminal history score violated his Sixth and Fourteenth Amendment rights. Cooper acknowledges the Kansas Supreme Court has already determined that the use of juvenile adjudications in calculating a defendant's criminal history score does not violate *Apprendi*. See *State v. Hitt*, 273 Kan. 224, 236, 42 P.3d 732 (2002). Nevertheless, he urges this court to overturn that precedent.

Our court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication the court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We see no indication that the Supreme Court is departing from *Hitt*, as evidenced by a litany of recent cases. See, *e.g.*, *State v. Waller*,

299 Kan. 707, 728-29, 328 P.3d 1111 (2014); *State v. Fischer*, 288 Kan. 470, 472-75, 203 P.3d 1269 (2009). Thus, we find no error.

*Postsentence motion to withdraw plea*

Next, Cooper asserts that the district court abused its discretion when it denied his postsentence motion to withdraw his plea. Specifically, he argues that "he was virtually forced into the plea" and that "the plea was not fairly and understandingly made."

To correct manifest injustice, after sentencing, district courts may set aside the judgment of conviction and permit the defendant to withdraw his or her plea. K.S.A. 2016 Supp. 22-3210(d)(2). Kansas courts have defined "manifest injustice" as something "'obviously unfair' or 'shocking to the conscience.'" *Ludlow v. State*, 37 Kan. App. 2d 676, 686, 157 P.3d 631 (2007). Three factors—known as the *Edgar* factors—generally guide a district court's consideration of whether a defendant has shown the manifest injustice necessary to withdraw a plea: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010); see *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors should not be applied mechanically to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

Appellate courts will set aside the denial of a motion to withdraw only if the defendant shows the district court abused its discretion. *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010). A district court abuses its discretion if: (1) no reasonable person would have taken the view adopted by the court; (2) its conclusion is based on an error of law; or (3) its conclusion is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Cooper's brief initially addresses both the second and third *Edgar* factors. However, the substance of his argument focuses solely on the third *Edgar* factor, which we will address below. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (point raised incidentally in brief and not argued therein is deemed abandoned).

At the motion to withdraw plea hearing, both Cooper and Adamson agreed that Cooper first reviewed the substance of the State's plea offer 1 to 2 weeks before he entered his formal plea. Adamson noted Cooper "was upset, visibly" when Adamson explained his exposure and the severity of the consequences. Nevertheless, Adamson maintained that he believed the plea was in Cooper's best interests. Cooper and Adamson then met in the courthouse on the date of Cooper's plea hearing—January 4, 2016—at which time Cooper reviewed a physical copy of the plea agreement and signed it. Cooper stated that he accepted the plea because "[i]t was a lot of pressure between me and Mr. Adamson. Like everything that was done between me and Mr. Adamson was like last minute."

After the plea hearing, Adamson testified he did not have any conversations with Cooper regarding the plea agreement and that it was not until sentencing that he discovered Cooper had an issue. Cooper contested these assertions and argued that he called Adamson's office multiple times following the plea hearing but was never able to speak to him. Adamson's secretary, Ashley Brinson, supported Cooper's testimony, noting that Cooper called continuously before and after he entered the plea agreement. According to Brinson, Cooper "was just really unsure of the plea." Although she was not certain, Brinson speculated that Adamson never returned Cooper's calls.

Ultimately, Cooper complained he did not have sufficient time to review the plea agreement with Adamson before the plea hearing. He argued that Adamson knew he did not want to serve 60 months in prison and that he accepted the plea because he "felt like [he] didn't have any other choice."

6

Cooper's testimony did not persuade the district court, which found:

"Well, first of all, I find that Mr. Adamson is a competent legal criminal defense attorney. He just testified he's been doing this for 26 years. I've been here for 20 years. And he's handled . . . hundreds of cases, and he's competent to do what he does.

"Regarding whether the defendant was misled, coerced, mistreated or unfairly taken advantage of, while Mr. Cooper has said today that there was this pressure, this wasn't the first time you had been through this, Mr. Cooper. You had been convicted on previous occasions as represented by your criminal history.

". . . I try to always ask individuals before they enter into a plea to take an oath and to swear that they have read, fully understand, and agree to each and every condition contained in the document, in your case called the Petition to Enter Plea Agreement. I did that with you, and you said you understood it.

"And the document . . . clearly reflects that you knew that if you got the benefit of your plea agreement, if I went along with it, you were going to prison for 60 months. If I didn't go along with it, you may have gone to prison for longer.

. . . .

"I'd be hard pressed to find any evidence in the transcript of sentencing, of the transcript of the plea, or today that you did not understand the consequences of your plea agreement. I'd be hard pressed to find that your plea agreement was not freely, knowingly and voluntarily made. It was.

"I understand you don't want to go to prison for 60 months. That's normal. But there's absolutely no evidence of manifest injustice here from which I should grant a judgment correcting it, and your motion to withdraw your plea is denied."

In his brief, Cooper renews many of the same assertions he raised below, placing special emphasis on the "very limited communication between [himself] and Adamson." According to Cooper, this lack of communication "all but forced [him] into the plea," even though he had serious reservations about the agreement. Cooper reasons "[a] guilty plea must be made voluntarily and it can only be voluntarily made after sufficient time to discuss the matter with counsel." He concludes that his limited interactions with

Adamson were "simply insufficient to allow the district court to accept a plea and find it was knowingly and voluntarily made."

Cooper's argument ignores a key fact presented to the district court: Adamson and Cooper met at least a week before the plea hearing to discuss the specifics of the State's plea offer. While Adamson testified that Cooper was upset about the prospect of serving time in prison, he stated that Cooper never gave any indication that he did not understand the plea agreement or preferred to go to trial. Cooper acknowledged that he did not say anything to either the district court or Adamson during his plea hearing that might have indicated he preferred to go to trial.

Contrary to his argument, Cooper had sufficient time to consider the State's plea offer—at least a week—and had the opportunity to object to the plea agreement both at his plea hearing and at sentencing. He did neither. In fact, at both hearings Cooper told the district court that he understood the terms of his plea agreement—including the 60-month prison term. Based on this evidence, there is no indication the district court abused its discretion when it denied Cooper's postsentence motion to withdraw his plea.

Affirmed.