IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,401

TERRAL BREEDLOVE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

Although not encouraged because it is susceptible to abuse, a district court's adoption of the State's response to a K.S.A. 60-1507 motion as the court's entire findings of fact and conclusions of law is not, as a matter of law, always reversible error. The K.S.A. 60-1507 movant has the burden to show that the district court failed to conduct an independent review of the motion, files, and records before summarily denying the motion.

2.

An indigent K.S.A. 60-1507 movant has a statutory right to appointed counsel when the district court finds that the motion presents substantial questions of law or triable issues of fact. Procedural due process dictates that a K.S.A. 60-1507 movant has a right to counsel whenever the district court conducts an actual hearing at which the State is represented by counsel.

1

3.

To prevail on a claim of ineffective assistance of counsel, a defendant must first establish that counsel's performance was deficient, and, if so, further establish prejudice, i.e., there was a reasonable probability that the jury would have reached a different result but for the deficient performance.

4.

A poverty affidavit may be filed in lieu of paying the $195 filing fee required by K.S.A. 2015 Supp. 60-2008 for dispositive motions. A poverty affidavit filed to originally docket a case may suffice as the poverty affidavit to subsequently file a dispositive motion under K.S.A. 2015 Supp. 60-2008 in the same case.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 14, 2017. Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed July 12, 2019. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

*Kristen B. Patty*, of Wichita, argued the cause and was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Terral Breedlove petitions this court for review of the Court of Appeals' decision affirming the district court's summary denial of his K.S.A. 60-1507 motion. With respect to the 60-1507 motion, Breedlove argues that the district court violated due process by failing to appoint counsel to represent him after reviewing a response from the State; that the district court abdicated its duties when it adopted the

2

State's response to the motion as its findings of fact and conclusions of law; and that the district court erred in finding that his motion failed to raise substantial issues regarding the effectiveness of his trial counsel. In addition, Breedlove challenges the district court's assessment of a $195 filing fee as a condition precedent to accepting his "Motion for Summary Disposition," which asked the district court to take action on his motion that had been pending for more than two years. We affirm the summary denial of the motion, but reverse the imposition of the filing fee.

FACTUAL AND PROCEDURAL OVERVIEW

Terral Breedlove was 17 in 1995 when he and a codefendant fatally shot a man behind a Wichita grocery store and stole his car. Breedlove was tried as an adult for this and other crimes and, relevant here, a jury convicted him of felony murder. His convictions and sentences were affirmed on direct appeal. *State v. Breedlove*, No. 80,952, unpublished opinion filed July 9, 1999 (Kan.) (*Breedlove I*).

In 2006 Breedlove filed a motion to correct an illegal sentence on the basis that the district court lacked jurisdiction because he was not initially charged in juvenile court and the State did not obtain authorization to prosecute Breedlove as an adult. This court agreed and reversed the convictions and vacated the sentences. *State v. Breedlove*, 285 Kan. 1006, 1017, 179 P.3d 1115 (2008) (*Breedlove II*).

The State brought charges in juvenile court, along with a motion requesting authorization for adult prosecution (MAP), which the juvenile court granted. Breedlove was represented by counsel at various stages in the juvenile and adult proceedings, including at the juvenile detention hearing, the hearing on the MAP, and at the eventual jury trial as an adult in Sedgwick County District Court.

3

At the retrial in 2009, Breedlove's codefendant, Israel Sosa, implicated Breedlove as the trigger man. A jailhouse informant testified regarding an overheard conversation in which Breedlove implicated himself. Other witnesses said they saw Breedlove in the vicinity of the murder and that he was armed and looking for a vehicle. Breedlove was defended by attorney John Sullivan at the retrial.

Breedlove was again convicted of first-degree murder and sentenced to life in prison. This court affirmed on direct appeal. *State v. Breedlove*, 295 Kan. 481, 482, 286 P.3d 1123 (2012) (*Breedlove III*).

The mandate issued October 9, 2012; Breedlove filed a pro se K.S.A. 60-1507 motion on September 4, 2013. Included with the motion were an affidavit of indigency, a motion to proceed in forma pauperis, and copies of his inmate trust account balance for the preceding six months. Breedlove filed an amended 60-1507 motion on November 12, 2013.

During the period from 2013 to 2015, Breedlove sent several letters to the district court requesting updates on his case. When those inquiries failed to get his motion heard, Breedlove attempted to file a motion for summary disposition in 2015. But the district court refused to accept the filing without an accompanying $195 fee, which is required for dispositive motions, such as motions for summary judgment. Eventually, in August 2015, Breedlove paid the $195 fee and his motion requesting disposition was filed.

Thereafter, the district court—which had already emailed the prosecutor's office requesting a response at least twice—again emailed the prosecutor, requesting that an attorney for the State file a response to Breedlove's 60-1507 motion. The State's response was filed on September 17, 2015, and two business days later the district court summarily denied the motion, adopting the State's response as the court's findings of facts and conclusions of law.

Breedlove timely appealed. The Court of Appeals affirmed, holding that the district court's adoption of the State's response as its findings of facts and conclusions of law was not error; that the district court did not err in summarily denying Breedlove's 60-1507 motion without appointing an attorney despite asking the State for a response; that none of Breedlove's attorneys provided ineffective assistance of counsel; and that the district court did not err in imposing the filing fee for the dispositive motion. *Breedlove v. State*, No. 115,401, 2017 WL 3001360, at *1 (Kan. App. 2017) (unpublished opinion) (*Breedlove IV*).

Breedlove timely petitioned for review.

DISTRICT COURT'S ADOPTION OF STATE'S RESPONSE AS ITS FINDINGS

Breedlove argues that the district court abdicated its constitutional responsibility and ceded judicial power to the State by adopting the State's response as its findings of fact and conclusions of law. He points out that the district court failed to act upon his motion for two years, and then adopted the State's response as its findings two business days after it was filed. Breedlove makes the conclusory claim that the procedure employed by the district court denied him due process.

*Standard of Review*

A summary denial of a 60-1507 motion is reviewed de novo to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). Likewise, whether a district court's findings of fact and conclusions of law are sufficient is reviewed de novo. *Robertson v. State*, 288 Kan. 217, 232, 201 P.3d 691 (2009). And

5

finally, "[t]he issue of whether due process has been afforded is a question of law over which we have unlimited review." *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

*Analysis*

When a district court summarily denies a 60-1507 motion, Supreme Court Rule 183(j) requires the court to make findings of fact and conclusions of law supporting its decision. (2019 Kan. S. Ct. R. 228.) The purpose of this requirement is to assist the appellate court in conducting meaningful review. *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000). In *Moncla* we remanded for more specific findings because we were "left guessing" as to the district court's rationale for denial of the postconviction motion. 269 Kan. at 65.

Conversely, even if a district court's findings are abbreviated, we will not remand solely on that basis—the relevant inquiry is whether we can conduct meaningful review. See *Robertson*, 288 Kan. at 232-33 (although district judge's rulings were "'sparse,'" findings and conclusions coupled with the judge's additional statements at the hearing were sufficient to allow for appellate review). In this case, we can conduct a meaningful appellate review because the record on appeal is comprehensive and review of the issues before us is de novo. See *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 403, 77 P.3d 130 (2003) ("[B]ecause this court reviews summary judgment de novo, the inadequacy of some of the trial court's findings does not preclude effective appellate review.").

Additionally, although we have frowned on the practice of a district court adopting a party's findings in their entirety, we have declined to adopt a bright-line rule that to do so is automatic error. *Stone v. City of Kiowa*, 263 Kan. 502, 505-06, 950 P.2d 1305 (1997) (although not encouraged because it is susceptible to abuse, adopting a party's findings in their entirety is not inherently erroneous). We agree with the Court of

6

Appeals' determination that Breedlove failed to carry his burden to show that the district court did not do what it was supposed to do, i.e., conduct an independent review of the record. *Breedlove*, 2017 WL 3001360, at *3. Breedlove offers no evidentiary or legal support on this point; rather, he asks us to infer that the district court could not have conducted a meaningful review based upon the fact that the district court's order followed so closely after the State's response, especially given that the motion had languished on file for over two years. Notwithstanding the unusual timeline, we decline to draw the suggested inference. Cf. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015) (when no objection made to district court's findings, appellate court can presume district court found all facts necessary to support its judgment).

Finally, we will briefly address Breedlove's argument that the district court ceded judicial power to the State and violated the constitutional principle of separation of powers. Kansas Constitution art. 3, § 1 vests the judicial power in the courts. "The separation of powers doctrine is not expressly stated in either the United States or Kansas Constitutions," rather, it arises out of the reality of the three-branch system of government. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 882-83, 179 P.3d 366 (2008). Simply put, "[e]ach of the three branches of our government . . . is given the powers and functions appropriate to it." 285 Kan. at 883.

But in actual practice there is some overlap between the powers of the various branches of government and "'separation of powers of government has never existed in pure form except in political theory.'" 285 Kan. at 883. Indeed, in *Morrison*, the Kansas Attorney General was found to be acting in his capacity as an officer of the court; and the separation of powers question in that case was between the judiciary, via the Attorney General, and the Legislature. 285 Kan. at 887-88. See also Supreme Court Rule 202 (2019 Kan. S. Ct. R. 239) (license to practice law is a proclamation by the Supreme Court that the holder is fit to be an officer of the Court). Accordingly, because the State's attorney was acting as an officer of the court, there is no violation of the separation of

7

powers. The district court's actions in this case are akin to the long-standing practice, codified in Supreme Court Rule 170 (2019 Kan. S. Ct. R. 222), of having attorneys prepare journal entries memorializing the results of hearings at the trial court. In short, there was no separation of powers violation here.

## APPOINTMENT OF COUNSEL FOR 60-1507 MOVANT

Breedlove raises a procedural challenge to the manner in which the district court handled his 60-1507 motion. Specifically, he argues that, by considering the State's reply to his 60-1507 motion, the district court demonstrated that it could not conclusively determine from the motion, files, and records that Breedlove was not entitled to relief. Therefore, Breedlove contends he was entitled to have counsel appointed and have a hearing on the merits of his claims. See K.S.A. 60-1507(b) (court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

*Standard of Review*

The extent of a movant's statutory right to counsel in a 60-1507 proceeding is a question of law subject to unlimited review. *Mundy v. State*, 307 Kan. 280, 294, 408 P.3d 965 (2018). To the extent that this matter involves interpretation of K.S.A. 60-1507, K.S.A. 22-4506, and Supreme Court Rule 183 (2019 Kan. S. Ct. R. 228), statutory and rule interpretation is also reviewed de novo. *Thompson v. State*, 293 Kan. 704, 710, 270 P.3d 1089 (2011).

*Analysis*

Breedlove bases his argument on the oft-quoted description of a district court's three options upon receiving a 60-1507 motion that was set forth in *Lujan v. State*, 270

8

Kan. 163, 170-71, 14 P.3d 424 (2000). He specifically relies on the third option, that was expansively described as follows: "Third, the court may determine that a potentially substantial issue or issues of fact are raised in the motion, supported by the files and record, and hold a preliminary hearing after appointment of counsel to determine whether in fact the issues in the motion are substantial." 270 Kan. at 170-71.

Breedlove asserts that when the district court requested a response from the State, it "essentially exercised the third *Lujan* option without appointing counsel for Breedlove," which would require a reversal and remand for a hearing with appointed counsel. Recently, we considered a similar argument and clarified that the event that triggers an indigent movant's statutory *right* to counsel is the district court's finding that "the [60-1507] motion presents substantial questions of law or triable issues of fact." *Stewart v. State*, 309 Kan. ___, ___, ___ P.3d ___ (2019) (No. 115,149, this day decided), slip op. at 16. That holding comports with long-standing precedent requiring the movant to meet the threshold of showing substantial legal issues or triable issues of fact. *Albright v. State*, 292 Kan. 193, 199, 251 P.3d 52 (2011); *Guillory v. State*, 285 Kan. 223, 228, 170 P.3d 403 (2007); *Robinson v. State*, 218 Kan. 1, 5, 542 P.2d 305 (1975). The existence of *potentially* substantial issues simply imbues the district court with the discretionary authority to appoint counsel for the movant, but does not statutorily require the appointment. *Stewart*, 309 Kan. at ___, slip op. at 11-12 ("[T]he district court may, but is not required to, appoint an indigent 60-1507 movant an attorney during the period the court is making its determination of whether the motion, files, and record present a substantial question of law or triable issue of fact.").

Likewise, we clarified that the circumstance requiring appointed counsel under the third *Lujan* option was not the presence of potentially substantial issues, but rather the district court's conducting a preliminary hearing to aid in the determination of substantial issues at which the State is represented by counsel. In that event, procedural due process dictates that the movant has a right to counsel at that hearing. *Stewart*, 309 Kan. at ___,

9

slip op. at 12-13. But simply reviewing the State's response to the motion, even when requested by the district court, is not the equivalent of an actual hearing and does not give rise to a right to counsel. See *Stewart*, 309 Kan. at ___, slip op. at 16.

In sum, the district court did not find substantial issues of law or triable issues of fact and did not conduct a hearing at which the State was represented. Consequently, the failure to appoint counsel to represent Breedlove was not erroneous.

CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Breedlove argues that he was entitled to an evidentiary hearing regarding his claims of ineffective assistance of counsel. Specifically, he claims that counsel at his juvenile detention hearing, Karen Palmer, was ineffective for failing to request or argue for his release upon an appearance bond. He believes that Julia Craft, his juvenile counsel at the MAP hearing, was ineffective for failing to notify his parents of the juvenile proceedings and for attempting to persuade Breedlove to waive the MAP hearing. Finally, he makes several allegations of ineffectiveness against his trial counsel, John Sullivan.

*Standard of Review*

When the district court summarily denies a K.S.A. 60-1507 motion, review is de novo to determine whether the motion, files, and records of the case conclusively establish the movant is not entitled to relief. *Sola-Morales*, 300 Kan. at 881.

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two factors of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984): first, counsel's performance was

10

deficient, and second, the defendant was prejudiced in that there is a reasonable probability that the jury would have reached a different result but for the deficient performance. *Sola-Morales*, 300 Kan. at 882.

*Analysis*

The Court of Appeals reviewed each of the substantive claims raised in Breedlove's 60-1507 motion and explained why counsels' performances were not deficient. We agree with the panel's assessment.

*Defense Attorney Karen Palmer*

With respect to Breedlove's claim that Palmer's assistance was deficient because she did not adequately advocate for Breedlove's pretrial release on bond during the detention hearing in the juvenile court, the panel noted that "it is not likely that Palmer's actions were deficient." *Breedlove IV*, 2017 WL 3001360, at *4. Nevertheless, the panel also observed that Breedlove had not shown that his continued pretrial detention had any impact on the jury or the outcome of the trial, i.e., Breedlove failed to establish the prejudice prong of the analysis. 2017 WL 3001360, at *4.

Our review of the record shows that Breedlove fails both prongs—counsel's performance was not deficient and there could not have been any prejudice. Palmer did not request release on bail at the detention hearing because she noted that Breedlove was being held without bail due to a hold from another county. Counsel's decision was practical and strategic; this court generally does not second-guess strategic decisions of counsel nor does it require counsel to make futile arguments. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013); *Chamberlain v. State*, 236 Kan. 650, 658, 694 P.2d 468 (1985) (when counsel has no sound basis to believe that pretrial motion would have merit and no basis to make such motion, failure to make it is not ineffective assistance).

11

The panel also pointed out that a 60-1507 motion is a vehicle to attack a sentence and does not include an attack on a detention hearing having no bearing on guilt or the sentence imposed. *Breedlove IV*, 2017 WL 3001360, at *4. We need not decide this issue, based on our conclusion that Palmer was not ineffective.

*Defense Attorney Julia Craft*

Craft represented Breedlove at the hearing in juvenile court to determine whether he should be prosecuted as an adult, and Breedlove first complains that she did not notify his parents of the hearing. The Court of Appeals disposed of this issue on the procedural ground that it was first raised in an amended 60-1507 motion and that the issue did not relate back to the original motion. *Breedlove IV*, 2017 WL 3001360, at *4-5. That determination is belied by the record. The original motion and accompanying pro se memorandum in support included the following claim:

> "Mr. Breedlove's court appointed juvenile counsel failed to act as an advocate when said juvenile counsel did not protect Mr. Breedlove's rights under the juvenile justice code to have his parents provided with notice of the accusations he was to face in juvenile court, nor were Mr. Breedlove or his parents served with notice of any kind informing them of the juvenile court hearing proceedings, most notable [*sic*] the juvenile detention hearing."

But we can affirm the panel on the merits of the claim. K.S.A. 2008 Supp. 38-2347(c)(1) required *the court* to notify each parent of a hearing on a motion for adult prosecution. Breedlove contends that Craft should have taken steps to protect his right to parental notification, but he does not convincingly explain for what purpose. He was 30 years old at the time of the MAP. He fails to establish that any shortcoming in Craft's performance relative to parental notification prejudiced the result of the MAP hearing.

12

*Trial Counsel John Sullivan*

Breedlove's principal complaint about Sullivan is based upon attorney discipline that was imposed on Sullivan well after Breedlove's trial. Breedlove's retrial was in 2009; Sullivan's license was first suspended in 2014 and the first allegation of any misconduct was in 2012. *In re Sullivan*, 308 Kan. 456, 457, 462, 420 P.3d 1001 (2018). Breedlove would have us infer that Sullivan's performance at his 2009 trial was substandard because of misconduct that occurred three years later. We decline the invitation. Later unprofessional conduct is not a per se determination of prior ineffective assistance. See *Wilson v. State*, 40 Kan. App. 2d 170, 180-81, 192 P.3d 1121 (2008). Allegations of deficient performance or misconduct must be connected to specific errors in the appellant's trial in order to constitute ineffective assistance. *Cheatham*, 296 Kan. at 434-35.

Breedlove's allegations specific to his trial are that Sullivan failed to pursue an alibi defense and failed to investigate other potential defense witnesses. The alibi defense claim is based on Breedlove's current assertion that an unidentified friend had given him a ride home at the time of the murder. Pointedly, however, Breedlove fails to identify that friend and points to nothing in the record that would indicate that he told his counsel about the alibi or provided his attorney with any information from which such a defense could have been developed. To avoid summary denial of a K.S.A. 60-1507 motion, a movant has the burden to make more than conclusory contentions and must state an evidentiary basis in support of those claims or some evidentiary support must appear in the record. *Edgar v. State*, 294 Kan. 828, 836, 283 P.3d 152 (2012). Breedlove fails to carry that burden here.

Next, Breedlove argues that counsel failed to interview and present a potential key witness who would have testified to seeing two other men at the crime scene talking to the victim. Again, Breedlove does not identify this witness; as with the alibi defense,

there is only a conclusory statement with no support in the record and we cannot declare counsel's performance to be deficient.

Breedlove also argues that a witness identified as C. Phillips would have contradicted testimony from another witness, Anthony Davis, who testified about incriminating statements Breedlove made while in jail. But again, Breedlove does not provide information beyond conclusory statements. Moreover, a review of the record shows that Sullivan impeached Davis' testimony in other ways; the jury convicted Breedlove anyway and Breedlove fails to show how he was prejudiced by this omission. See *Wilkins v. State*, 286 Kan. 971, 985-87, 190 P.3d 957 (2008) (not ineffective for failing to cross-examine State's witnesses about plea agreement when information came into evidence through other witnesses).

Breedlove argues that Sullivan failed to impeach certain witnesses with testimony from the 1997 trial, but we agree with the Court of Appeals that a review of the record shows no merit to this contention. Sullivan did impeach one of the witnesses, Davis, and attempted to impeach others. Breedlove has not shown how Sullivan's performance was deficient in this aspect. See *Wilkins*, 286 Kan. at 987 (failure to impeach must satisfy *Strickland* test to be ineffective).

Breedlove complains that Sullivan was deficient for failing to object to testimony from the victim's daughter because the testimony served no purpose but to inflame the passions of the jury. Our review of the record shows that the daughter's testimony was brief, was not sensational, and served the legitimate purpose of establishing the victim's identity and explaining his presence at the crime scene. See *State v. Parker*, 277 Kan. 838, 843-44, 89 P.3d 622 (2004) (video evidence that incidentally showed that victim had daughter was not gratuitous or inflammatory, evidence was relevant to corroborate other witness testimony and show the crime scene). Because counsel's objection would have been unavailing, his failure to make it was not deficient performance.

14

Finally, Breedlove argues Sullivan failed to lodge contemporaneous and specific objections in order to preserve issues for appeal and that failure resulted in this court declining to review several claims on appeal. The Court of Appeals found that Breedlove's complaint on this issue was based on conclusory statements without specifically identifying the instances in the record where Sullivan failed to object. *Breedlove IV*, 2017 WL 3001360, at *8. As stated above, assertions of ineffectiveness must be based on more than conclusory statements. *Sola-Morales*, 300 Kan. at 881-82. More importantly, however, Breedlove fails to demonstrate how the outcome of the trial would have been different if the objections had been made; our review of the record indicates that it would not have been different. See *Strickland*, 466 U.S. at 687.

After analyzing all of the claims of ineffectiveness against Craft, Palmer, and Sullivan, Breedlove fails to carry his burden to show that their performances were deficient and does not show how the outcome of his trial was prejudiced by their performances.

IMPOSITION OF $195 FILING FEE FOR DISPOSITIVE MOTION

Breedlove filed his 60-1507 motion on September 4, 2013; he also filed an affidavit of indigency, supporting financial documentation, and a motion to proceed in forma pauperis.

On June 5, 2015, K.S.A. 2015 Supp. 60-2008 became effective, which establishes a $195 fee for "any party filing a dispositive motion" in civil matters. The record does not give a precise date, but also in June 2015, after the effective date of this statute, Breedlove attempted to file a "Motion for Summary Disposition." The district court refused to accept the filing because it was not accompanied by the newly mandated $195 fee. Breedlove later was able to file the motion, accompanied by the $195 fee.

15

*Standard of Review*

This question involves interpretation of K.S.A. 2015 Supp. 60-2008 and other statutes; interpretation of statutes is a question of law subject to unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

*Analysis*

K.S.A. 2015 Supp. 60-2008 provides:

"(a) On and after the effective date of this act, any party filing a dispositive motion shall pay a fee in the amount of $195 to the clerk of the district court. *A poverty affidavit may be filed in lieu of payment of such fee*, as established in K.S.A. 60-2001, and amendments thereto. The fee shall be disbursed in accordance with K.S.A. 20-362, and amendments thereto. The fee shall only be established by an act of the legislature and no other authority is established by law or otherwise to collect such fee. Such fee shall be an item allowable as a cost pursuant to K.S.A. 60-2003, and amendments thereto.

"(b) As used in this section, 'dispositive motion' means a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment or partial summary judgment or a motion for judgment as a matter of law. 'Dispositive motion' also shall include any motion determined by a judge to be seeking any disposition described in this subsection, regardless of the title assigned to such motion at the time of filing." (Emphasis added.)

This court has not had cause to consider this statute since its enactment, and it is not altogether clear that Breedlove's pro se pleading, attempting to get the district court to take action upon his two-year-old 60-1507 motion, is of the type intended to be designated as a "dispositive motion" under K.S.A. 2015 Supp. 60-2008(b). But Breedlove does not challenge the imposition of the fee on that basis. Rather, he asks us to review the

16

Court of Appeals' holding that Breedlove did not fit within the specific statutory exception in subsection (a), i.e., a poverty affidavit may be filed in lieu of paying the filing fee.

The panel faulted Breedlove for failing to file a poverty affidavit with the motion for summary disposition. But, as noted above, Breedlove had already filed a poverty affidavit with his original 60-1507 motion, pursuant to K.S.A. 60-2001, the same statute referred to in K.S.A. 2015 Supp. 60-2008(a). When the district court accepted and docketed this case, it necessarily accepted the veracity of the affidavit and supporting documentation. Consequently, the district court demanded a $195 fee to file a prisoner's pleading in a case in which the court had already determined the prisoner to be indigent.

The panel dealt with this anomaly in two ways. First, it determined that Breedlove had not preserved his challenge to the filing fee by objecting in the district court. But then the panel went on to consider the efficacy of the assessment in light of the prior poverty affidavit. In that regard, the panel opined that the $195 fee was being assessed against the dispositive motion, not the 60-1507 motion, and that the fee did not relate to Breedlove's sentence, which a 60-1507 is designed to challenge. *Breedlove IV*, 2017 WL 3001360, at *8-9.

With respect to preservation, the State did not cross-petition for review, claiming the panel erred in considering the merits of Breedlove's filing-fee argument, after declaring the issue abandoned. Moreover, Supreme Court Rule 8.03(b)(6)(C)(i) states that the Supreme Court "may address a plain error not presented." (2019 Kan. S. Ct. R. 55.) Demanding another docketing fee in a case that was opened with a poverty affidavit in lieu of docketing fee was plain error.

The panel treated this case as if it were two proceedings involving two docketing fees under K.S.A. 2015 Supp. 60-2001. To the contrary, there was but one proceeding

17

with one case number. Accordingly, the dispositive motion fee was more akin to a court cost in the 60-1507 proceeding. Indeed, K.S.A. 2015 Supp. 60-2008(a) specifically provides that "[s]uch fee shall be an item allowable as a cost pursuant to K.S.A. 60-2003, and amendments thereto." Consequently, the district court erred in refusing to file Breedlove's motion for summary disposition based upon the existing poverty affidavit in lieu of the $195 filing fee. We remand with directions to refund the filing fee.

CONCLUSION

We affirm the district court's summary denial of Breedlove's motion. The State's filing of a written response to the 60-1507 motion did not, standing alone, trigger Breedlove's statutory right to counsel; the district court's adoption of the State's response as its findings of fact and conclusions of law is not reversible error; and Breedlove's substantive claims regarding the effectiveness of his trial counsel fail because Breedlove fails to show how counsel's performance was deficient and fails to demonstrate any prejudice to the outcome of his trial. However, the district court's imposition of the $195 filing fee for the dispositive motion, pursuant to K.S.A. 2015 Supp. 60-2008, was erroneous because Breedlove had filed a poverty affidavit pursuant to K.S.A. 2015 Supp. 60-2001. We reverse the district court on the imposition of the fee.

Affirmed in part, reversed in part, and remanded with directions.

* * *

STEGALL, J., concurring: I join the majority opinion in all respects but one. I concur in the court's holding that there was no separation of powers violation, though I do not agree with the majority's rationale. I do not think that "because the State's attorney was acting as an officer of the court, there is no violation of the separation of powers." Slip op. at 7-8. Instead, I would hold that there was no separation of powers violation

18

because, as the majority recites elsewhere, "Breedlove failed to carry his burden to show that the district court did not do what it was supposed to do, i.e., conduct an independent review of the record." Slip op. at 7 (citing *Breedlove v. State*, No. 115,401, 2017 WL 3001360, at \*3 [*Breedlove IV*]). This means, necessarily, that there is no indication in the record that the judicial branch "shared" its exclusive governing function with any other branch of government.

The majority opinion, by relying instead on the notion that a prosecuting attorney is an officer of the court, suggests that a prosecuting attorney can constitutionally carry out a judicial function because "there is some overlap between the powers of the various branches of government and '"separation of powers of government has never existed in pure form except in political theory."'" Slip op. at 7. I strongly disagree.

I have previously critiqued our separation of powers jurisprudence—in particular the pernicious notion of "overlapping" and "shared" powers that must be "harmonized" to give government "sufficient flexibility to experiment and to seek new methods of improving governmental efficiency." *State, ex rel., v. Bennett*, 219 Kan. 285, 289, 547 P.2d 786 (1976). See *Solomon v. State*, 303 Kan. 512, 538, 364 P.3d 536 (2015) (Stegall, J., concurring) (criticizing the rule that "the constitutional separation of powers can essentially be *waived* by the departments of government whenever they find such separation an inconvenient impediment to some sought-after governmental end misapprehends and may fatally undermine the fundamental purpose of such walls of separation in the first instance—to prevent the 'gradual concentration of the several powers in the same department' which 'may justly be pronounced the very definition of tyranny.' [James Madison, The Federalist No. 51, p. 321 and No. 47, p. 301 (C. Rossiter ed. 1961)].").

As I have written:

19

"I would return this court to the active judicial role and obligation to guard and protect a clear and strong wall of separation between each of the three great departments of government—keeping each within its proper province and protecting those provinces from colonization by the other two departments. It is within the judicial province to carefully exercise this power without deference to the other branches, and it is the duty of our department to carry out this obligation without regard to whether the results are perceived to be either beneficial or detrimental to judicial interests or other sub-constitutional interests such as what we (or any other government official) decide is 'practicable' or 'efficient.'"

*Solomon*, 303 Kan. at 545 (Stegall, J., concurring).

Moreover, the slide into permitting prosecutors to exercise judicial or even quasi-judicial functions is not an innocent one and may have deleterious real-world consequences. See *State v. Ingham*, 308 Kan. 1466, 1483, 430 P.3d 931 (2018) (Stegall, J., concurring) (explaining that giving prosecutors "the authority to decide what the law is . . . gives rise to doubts about whether such laws violate the doctrine of separation of powers" and "'invite[s] arbitrary power'" into the criminal justice system); *Kisor v. Wilkie*, No. 18-15, 2019 WL 2605554, at *27, 588 U.S. __, __ S. Ct. __, __ L. Ed. 2d __ (filed June 26, 2019) (Gorsuch, J., concurring) (allowing an agency to "both write and interpret rules that bear the force of law" unites "powers the Constitution deliberately separated and den[ies] the people their right to an independent judicial determination of the law's meaning"); *Gundy v. United States*, No. 17-6086, 2019 WL 2527473, at *21, 588 U.S. __, __ S. Ct. __, __ L. Ed. 2d __ (filed June 20, 2019) (Gorsuch, J., dissenting) (arguing that allowing the Attorney General to enforce an Act while also allowing the Attorney General to rule when and to whom the Act applies "would be to mark the end of any meaningful enforcement of our separation of powers and invite the tyranny of the majority that follows"); *Sessions v. Dimaya*, 584 U.S. __, 138 S. Ct. 1204, 1228, 200 L. Ed. 2d 549 (2018) (Gorsuch, J., concurring in part and concurring in judgment) (overlooking the separation of powers between branches leaves "prosecutors free to

20

'condem[n] all that [they] personally disapprove and for no better reason than [they] disapprove it'").

For these reasons, I would hold that on the one hand, there is no evidence in *this* case that the prosecutor exercised a judicial power. On the other hand, I would be more vigilant to police this important governmental boundary—rather than permit its blurring on the suspect notion that because a prosecutor is an "officer of the court" he or she is necessarily engaged in carrying out an "overlapping" power.