NOT DESIGNATED FOR PUBLICATION

No. 115,904

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEDRIN D. LITTLEJOHN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion on remand filed January 10, 2020. Reversed and remanded with directions.

*Michael P. Whalen* and *Krystle M. S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

PER CURIAM:  This case returns to us on remand from the Kansas Supreme Court. See *Littlejohn v. State*, 310 Kan. 439, 447 P.3d 375 (2019) (*Littlejohn III*). We must determine whether Kedrin D. Littlejohn has presented exceptional circumstances that justify reaching the merits of his successive motion filed under K.S.A. 60-1507.

1

The facts surrounding Littlejohn's crimes and subsequent conviction can be found in *State v. Littlejohn*, 298 Kan. 632, 316 P.3d 136 (2014) (*Littlejohn I*), the Kansas Supreme Court's opinion relating to Littlejohn's direct appeal. Essentially, Littlejohn was convicted of felony murder, aggravated robbery, aggravated kidnapping, and aggravated assault due to his actions in a botched robbery. As for the facts necessary to review this claim, they are set out in *Littlejohn III*.

Although the district court found that Littlejohn was competent to stand trial, there was evidence that Littlejohn was mentally retarded. Littlejohn had his IQ tested in 2006, and the associated report indicated that Littlejohn had an IQ of 49, which is less than the 0.1 percentile and is in the "moderate mental retardation range." *Littlejohn III*, 310 Kan. at 440. The 2006 report also referred to an IQ test Littlejohn took in 1997, when he was 7 years old. The 1997 report is not in the record but apparently Littlejohn's IQ level was 100 at the time.

Littlejohn's mental abilities were tested while he was in custody. Dr. Mitchell Flesher, a psychologist, testified as an expert for Littlejohn at a suppression hearing. According to Dr. Flesher, Littlejohn "read at a third grade level, spelled at a fourth grade level, and displayed fourth grade level math skills." *Littlejohn III*, 310 Kan. at 441. Each of the scores were in the first or second percentile. Littlejohn's full scale IQ was 71, which is technically higher than the threshold IQ of 70 to be considered mentally retarded. But Dr. Flesher diagnosed Littlejohn as mentally retarded and explained his reasons for doing so.

At trial, Littlejohn's counsel did not raise a mental defect defense nor did counsel request any jury instructions relative to Littlejohn's mental retardation. Instead, counsel focused on inconsistencies in the evidence and attempted to portray Littlejohn as a

victim, as opposed to a participant, in the crimes. He raised a compulsion defense but did not link Littlejohn's diminished intellectual capacity to the defense. His defense was unsuccessful, and Littlejohn was convicted. His convictions were affirmed on direct appeal, and the mandate issued February 10, 2014. *Littlejohn III*, 310 Kan. at 441.

Littlejohn filed a K.S.A. 60-1507 motion in June 2014, but it was denied because the claims were conclusory. Littlejohn, with the assistance of appointed counsel, appealed the denial in October 2014, but he voluntarily withdrew his appeal a couple of months later. The first K.S.A. 60-1507 motion and the orders relating to it are not in the record but the facts surrounding it are not in dispute. According to the order denying his current motion, Littlejohn argued that his trial counsel was ineffective in his first K.S.A. 60-1507 motion, although we do not know on what basis.

Littlejohn filed his second 60-1507 motion in January 2015. Littlejohn was represented in this appeal by the same law firm that represented him on appeal in his first K.S.A. 60-1507 motion. Littlejohn's motion raised several arguments, including an ineffective assistance of counsel claim for his trial counsel's failure to utilize a mental defect defense. The district court denied the motion as successive.

Littlejohn appealed the denial, arguing the district court erred in dismissing the motion as successive because he demonstrated exceptional circumstances that would permit a second motion. This court reversed the dismissal and remanded for a hearing on whether trial counsel was ineffective for failing to investigate Littlejohn's mental defect defense. *Littlejohn v. State*, No. 115,904, 2017 WL 2833312, at *10 (Kan. App. 2017) (unpublished opinion) (*Littlejohn II*).

The Kansas Supreme Court reversed this court's decision and remanded the case to us to apply the "correct" legal standard. *Littlejohn III*, 310 Kan. at 446. The Supreme Court referred us to a case—decided after we filed our opinion in this case—which set

out the proper method of review—*Nguyen v. State*, 309 Kan. 96, 431 P.3d 862 (2018). 310 Kan. at 443-45.

Our determination must be focused on whether "Littlejohn had presented exceptional circumstances to justify reaching the merits of the motion, factoring in whether justice would be served by doing so." *Littlejohn III*, 310 Kan. at 446. The Supreme Court explained:

> "[T]he merit of a movant's claims will factor into the calculus of whether a movant has presented exceptional circumstances to avoid dismissal of a successive motion. But the presentation of any colorable claim is not the determinative factor on whether a successive motion gets an evidentiary hearing on the merits." *Littlejohn III*, 310 Kan. at 445-46.

Given the instructions from our Supreme Court, we begin our analysis anew with the guidance provided by the Supreme Court in *Nguyen* and *Littlejohn III* firmly in mind and a recognition that the existence of a colorable claim is not a determinative factor.

ANALYSIS

We begin by noting that most of the claims Littlejohn raised in his present K.S.A. 60-1507 motion could have been raised on direct appeal. But some of his claims included arguments that his trial counsel was ineffective. In *Littlejohn II*, we found that only two of his claims merit further review—that his counsel was ineffective for failing to use Littlejohn's mental defect as a defense and that his counsel was ineffective for failing to request a jury instruction on mental defect. We stand on that position and incorporate *Littlejohn II* as to the efficacy of the other claims made by Littlejohn. Because the district court summarily denied Littlejohn's K.S.A. 60-1507 motion, our review is de novo. *Littlejohn III*, 310 Kan. at 443. Littlejohn has the burden to show how reaching the merits

of his successive motion would serve justice. See *State v. Roberts*, 310 Kan. 5, 14, 444 P.3d 982 (2019).

So we turn to the requirements of the statute, the caselaw, and the rule regarding successive K.S.A. 60-1507 motions.

1. The Statute. K.S.A. 2018 Supp. 60-1507(c).

   "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

2. The Caselaw. Over 40 years of caselaw by the Kansas Supreme Court has held that there are exceptions to this rule but only if "the errors affect constitutional rights and there are exceptional circumstances which justify entertaining a second or successive motion." *Dunlap v. State*, 221 Kan. 268, 270, 559 P.2d 788 (1977).

   a. Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant from raising the issue in a preceding K.S.A. 60-1507 motion. Whether justice would be served by reaching the merits of the subsequent motion is an important consideration. *Nguyen*, 309 Kan. at 109, 111.

   b. Whether justice would be served by reaching the merits of a successive motion is part of the statutorily driven analysis of whether exceptional circumstances exist. *Littlejohn III*, 310 Kan. at 444-45.

   To that end the Kansas Supreme Court has drafted rules to govern the procedures in these cases. Supreme Court Rule 183 (2019 Kan. S. Ct. R. 228) explains and implements the procedure to be followed under K.S.A. 60-1507. *Nguyen*, 309 Kan. at 108.

3.  The Supreme Court Rule. Supreme Court Rule 183(d) (2019 Kan. S. Ct. R. 230).

    "A sentencing court may not consider a second or successive motion for relief by the same movant when:

    (1)  the ground for relief was determined adversely to the movant on a prior motion;

    (2)  the prior determination was on the merits; and

    (3)  justice would not be served by reaching the merits of the subsequent motion."

We next apply the statute, caselaw, and rule to the facts of this case.

First, it is undisputed that there has been no intervening change in the law that would have prevented Littlejohn from raising his claims either on direct appeal or in his first K.S.A. 60-1507 motion.

Second, we cite our holding from *Littlejohn II* regarding the first two requirements under Rule 183(d):

> "The first part of the successive motion rule bars Littlejohn's claims if the ground for relief was determined adversely to him in his prior motion. Supreme Court Rule 183(d)(1). The district court denied the ineffective assistance of counsel claims raised in Littlejohn's first motion, so that part of the test is satisfied. The second part of the rule bars Littlejohn's claims if the prior determination was on the merits. Supreme Court Rule 183(d)(2). The district court dismissed his first motion on the grounds that the claims were conclusory. While the district court did not get into the substance of the motion, the ruling was on the merits insofar as the case was not dismissed pursuant to some procedural bar. The final part of the rule bars Littlejohn's claim if 'justice would not be served by reaching the merits of the subsequent motion.' Supreme Court Rule 183(d)(3) (2017 Kan. S. Ct. R. 223). Littlejohn argues that justice would be served by considering his claims." *Littlejohn II*, 2017 WL 2833312, at *5.

Third, as to the last factor, whether justice would be served by reaching the merits—*Nguyen* also provides guidance. In fact, the *Nguyen* court quoted with approval from our now overruled decision in *Littlejohn II*:

"Accordingly, we should 'not "justify relentless, unyielding, and unremitting application of the successive motion rule when [a] sense of justice require[s] that a colorable and actionable claim be heard on its merits."' *Littlejohn v. State*, No. 115,904, 2017 WL 2833312, at *6 (Kan. App. 2017) (unpublished opinion) (quoting *Saleem v. State*, No. 94,945, 2006 WL 3353769, at *13 [Kan. App. 2006] [unpublished opinion]). After all, inscribed on the wall of the atrium in the Kansas Judicial Center are the following words: "Within These Walls the Balance of Justice Weighs Equal." 309 Kan. at 111.

In support of his claims, Littlejohn asserts that his mental retardation would negate the intent elements of the crimes of which he was convicted. *Littlejohn II*, 2017 WL 2833312, at *7. Although the district court found that Littlejohn did not argue any exceptional circumstances to overcome the procedural bar of successiveness, Littlejohn did assert in his motion that his attorney's ineffectiveness rises to the level of an exceptional circumstance. He supported his claim with attachments which include his psychological evaluation and diagnosis. So on appeal, we look not at the merits of his claim but at whether his claim establishes exceptional circumstances to evade a dismissal due to successiveness and justify an evidentiary hearing on his claim.

We find several factors support hearing this claim even though it is successive.

First, we note that in *Nguyen* the court found that the fact Nguyen was Vietnamese and had little grasp of the English language was a factor to be considered in whether exceptional circumstances existed. 309 Kan. 109-10. Here, according to the record, Littlejohn has a low IQ, to the extent he could be classified as borderline mentally retarded. His low IQ, like Nguyen's limited understanding of English, would limit

Littlejohn's ability to read the opinions issued in his case and understand the case or statutory laws and make written arguments to support his case.

Second, the *Nguyen* court noted that both Nguyen's counsel on direct appeal and on his prior K.S.A. 60-1507 motion failed to raise a multiplicity argument that was successfully raised by his codefendants. Being a nonnative English speaker, having no access to an interpreter, and being assigned dilatory if not incompetent counsel who failed to raise a meritorious issue, was deemed exceptional to most persons. 309 Kan. 110. Like Nguyen, Littlejohn's limited intellectual capacity coupled with appellate and 60-1507 counsel who for some unknowable reason did not recognize that his low IQ would be a valid issue when charged with a specific intent crime, would appear exceptional to most people.

Third, although Littlejohn raised an ineffective counsel claim in his first motion, we do not know how he claimed his counsel was ineffective and whether he made such a claim regarding both trial and appellate counsel or just trial counsel. The motion is not contained in the record on appeal. We find it noteworthy that the same attorney who represents Littlejohn on this motion represented him in withdrawing his prior motion and also represented his codefendant in this case. It is unclear why counsel was not conflicted out of both 60-1507 cases. Justice would be served by allowing Littlejohn to pursue his ineffective assistance of counsel claims with conflict-free counsel.

Fourth, in support of his argument, Littlejohn attached a psychological evaluation report to his K.S.A. 60-1507 motion. The evaluation was completed when Littlejohn was 16 years old—2 years before the events leading to his convictions. The report states that Littlejohn had a Full Scale IQ of 49, which is considered moderate mental retardation. The report concluded that Littlejohn "has had significant intellectual and academic difficulties" and that he "tests out lower intellectually than would be implied by his conversation."

8

Kansas allows a defendant to put on evidence that would show the defendant was unable to form the mens rea required for the charged crime. "It shall be a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the culpable mental state required as an element of the crime charged. Mental disease or defect is not otherwise a defense." K.S.A. 2018 Supp. 21-5209. "If defense counsel had properly investigated this issue, and if that investigation had revealed evidence to support a valid mental capacity defense, then counsel's failure to conduct a proper investigation would have been ineffective assistance of counsel." *Beckford v. State*, No. 108,693, 2013 WL 5870047, at *4 (Kan. App. 2013) (unpublished opinion) Moreover, as we stated in *Littlejohn II*:

"Littlejohn's counsel at the trial, Quentin Pittman, did not present evidence of Littlejohn's mental capacity to the jury. Pittman's strategy at trial was to focus on inconsistencies in the evidence and to argue that Littlejohn was a victim, not a perpetrator, of the crimes committed. However, information on Littlejohn's mental capacity was presented before his trial. Before trial, the district court ordered Littlejohn to undergo a competency evaluation. At that time, Littlejohn was represented by Kevin Loeffler. The competency evaluation report stated: '[P]lease note it may be helpful to have IQ testing completed on Mr. Littlejohn to better understand his level of intellectual functioning.' The report said that despite the fact that Littlejohn's 'most recent IQ testing indicates he is mentally retarded,' he was competent to stand trial. Loeffler disagreed that Littlejohn was competent to stand trial, noting that the report 'says he's competent, but then it qualifies that with that he's competent if he's able to develop a rapport and . . . have trust in his attorney.' Loeffler did not believe that Littlejohn trusted him. Loeffler asked the court to undergo further competency evaluation and 'get an IQ evaluation at the same time.' The district court did not directly address Loeffler's requests, but found that Littlejohn was competent to stand trial based on the report.

"Several months later, at a pretrial motions hearing, the subject of Littlejohn's mental capacity was raised again. At that time, Pittman was representing Littlejohn. One of Littlejohn's prior attorneys had filed a motion to suppress statements that Littlejohn made to the police on the basis that Littlejohn had not knowingly or intelligently waived

9

his *Miranda* rights. Pittman called a psychologist, Dr. Mitchell Flesher, as a witness to present evidence on Littlejohn's mental condition. Dr. Flesher testified that Littlejohn's reading skills were at a third grade level, which is in the first percentile of his age group. Dr. Flesher explained that testing in the first percentile means that in a group of 100 people in the same age category as Littlejohn, 'he would be basically the lowest one or two scores in that group . . . .' Littlejohn performed at a fourth grade level in spelling and arithmetic. Dr. Flesher tested Littlejohn's Full Scale IQ, which is an overall IQ score, at 71. This score is in the third percentile, meaning that 'it's in the lower 1, 2, 3 or 4 among . . . a hundred people that are administered that test in that age range.' Dr. Flesher concluded that 'someone who scores a 71 may be categorized as mentally retarded, even though the formal range for that is considered below 70,' because the tests leave room for error of measurement." *Littlejohn II*, 2017 WL 2833312 at *8.

Here, while Littlejohn's previous attorneys recognized the importance of his mental capacity in the overall scheme of his admissions and culpability, his trial counsel did not raise the issue as a defense to the specific intent necessary to commit the crimes for which he was charged nor to further bolster his claim that Littlejohn was a victim who was compelled to participate in the crime through compulsion. He did not mention Littlejohn's low IQ at all during the trial, including opening and closing statements.

Littlejohn was 18 years old when the senseless and horrific murder for which he was convicted occurred. He was sentenced to life in prison plus 277 months. With a diagnosis of mental retardation, charges based solely on an aiding and abetting theory, and a defense of compulsion we believe justice would be served by an evidentiary hearing to determine whether Littlejohn's trial counsel's performance was ineffective and whether Littlejohn was prejudiced by it. See *Breedlove v. State*, 310 Kan. 56, Syl. ¶ 3, 445 P.3d 1101 (2019) ("To prevail on a claim of ineffective assistance of counsel, a defendant must first establish that counsel's performance was deficient, and, if so, further establish prejudice, i.e., there was a reasonable probability that the jury would have reached a different result but for the deficient performance."). Littlejohn has met his burden.

Accordingly, we find there are exceptional circumstances shown to allow Littlejohn to bring a successive K.S.A. 60-1507 motion. Therefore, we reverse and remand for a hearing on the issue of whether trial, appellate, and 60-1507 counsel were ineffective for failing to investigate or present Littlejohn's mental capacity defense. In doing so, we specifically express no opinion on the merits of such contentions.

Reversed and remanded with directions.