NOT DESIGNATED FOR PUBLICATION

No. 121,856

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID GEIST,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed December 23, 2020. Affirmed.


*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.


*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., MALONE, J., and MCANANY, S.J.


PER CURIAM: David Geist appeals the district court's denial of his K.S.A. 60-1507 motion. Geist maintains that his trial counsel provided unconstitutionally ineffective assistance of counsel by failing to call an expert witness to testify at his criminal trial, and he asserts that the district court erred in finding that he had no right to relief on this claim. Finding no error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2012, a jury convicted Geist of two counts of aggravated indecent liberties with a child. The victims were his two daughters, A.G. and E.G. *State v. Geist*, No. 108,257, 2014 WL 801854, at *1 (Kan. App. 2014) (unpublished opinion). Both girls testified at the trial and the State admitted into evidence interviews of the girls conducted at Sunflower House. The district court sentenced Geist to a controlling term of life without the possibility of parole for 25 years. Geist filed a direct appeal, and this court affirmed his convictions and sentence. 2014 WL 801854, at *1. The Kansas Supreme Court denied his petition for review on June 29, 2015, and the Clerk of the Appellate Courts issued the mandate on July 2, 2015.

On June 29, 2016, Geist timely filed a K.S.A. 60-1507 motion in district court. Geist raised many issues in the motion; as relevant to this appeal, he argued that his trial counsel, David Magariel, was ineffective because of "his failure to retain an expert witness on the issue of appropriate child interview techniques." He asserted that Magariel could have used an expert to attack A.G. and E.G.'s interviews, to present testimony about forensic interviewing of child sex abuse victims, and to prepare to cross-examine the investigating officers. Geist claimed that use of expert testimony was crucial to his case, which he contended Magariel would have known had he adequately investigated.

On August 9, 2017, the State moved to dismiss, arguing that Geist had raised no issues that warranted an evidentiary hearing because res judicata barred seven of Geist's claims and the district court should summarily deny the remaining three, including his ineffective assistance of counsel claims. The State asserted that the motion, files, and records of the case conclusively showed that Geist was entitled to no relief. Geist responded to the motion, asserting that his claims were substantial enough to justify an evidentiary hearing, at least on his claims of ineffective assistance of counsel.

2

The district court agreed with Geist and held an evidentiary hearing on September 27, 2018. By the time that hearing occurred, the parties had narrowed the focus of Geist's K.S.A. 60-1507 motion to whether Magariel's failure to use expert testimony at the trial resulted in ineffective assistance of counsel that prejudiced Geist.

Magariel testified at the hearing that he had considered hiring an expert on child interviewing techniques. He spoke with a more experienced defense attorney who recommended Dr. Greg Sisk, a psychologist. During his sole phone conversation with Sisk, the date of which Magariel could not remember, he asked Sisk "what things he would be looking for in reviewing Sunflower House [interviews] and other issues in the case that would draw his attention." Sisk said that it was important to know whether the children had made any statements about abuse before the interview because that could be evidence about the appropriateness of the interviews at Sunflower House. Magariel knew that both girls had done so, so he "thought that was something that weighed against [using Sisk's] testimony." Evidence admitted at trial showed that both A.G. and E.G. separately confided in friends and then adults that Geist had inappropriately touched them. Sisk also emphasized to Magariel the importance of whether the interviewer had reinforced certain answers or used leading questions.

Magariel also testified that he did not consider the Sunflower House interviews the most damaging evidence against Geist. Although Magariel did not identify what he believed to be the most damaging evidence, a review of the record shows that A.G. and E.G. both testified at trial that Geist had molested them many times. The State also admitted into evidence at trial postcards Geist sent his wife and children from jail in which he admitted he "'made many mistakes in my life with you all,'" he told his wife "'I know I did you and the kids wrong,'" and he asserted that he "'sure would like to make all this up to all of you through Jesus.'" 2014 WL 801854, at *3-4. And during an interview with police, a recording of which was published to the jury, when confronted with A.G.'s allegations, Geist at first denied touching her but eventually said, "'If she said it

3

happened, it happened.'" 2014 WL 801854, at *1. Moreover, when the detective asked Geist during the interview "whether he did it, Geist responded, 'Yes.'" 2014 WL 801854, at *1.

Magariel testified that his defense theory was that A.G. had made false allegations because Geist was the "disciplinarian" parent and he had prohibited her from pursuing a relationship. Magariel "knew early on" that his defense strategy would include an attempt to discredit A.G. by pointing out that she had recanted her allegations at one point and then said that the recantation was a lie. Magariel felt that focusing on the changing details of the girls' allegations was the best defense strategy to pursue. Thus, Magariel testified he "wasn't sure there was a ton of value in discrediting the interview" and he decided not to retain Sisk as an expert; he "just didn't think it was going to add much to our defense."

Next, Geist presented expert testimony from clinical psychologist Dr. Robert Barnette, who had reviewed the trial testimony of Kay Spaniol, the social worker who was treating A.G. and E.G. Barnette contended that Spaniol did "not really seem to have any mastery of research that's widely and easily available." He disagreed with her trial testimony that there are certain general characteristics displayed by sexually abused children, asserting that there are no such characteristics that do not also occur in children who were not sexually abused. Barnette also disagreed with Spaniol's trial testimony that delayed disclosure of sexual abuse is common; he testified that research and literature did not support that statement. Similarly, although Spaniol testified that children recanting sexual abuse allegations happens "quite often," Barnette testified that the research did not support that statement and, in his own experience, recantation was "relatively rare."

Barnette also reviewed the Sunflower House interviews. He testified that the protocol being used—which he identified as the RATAC or Finding Words protocol— was not peer-reviewed and the reliability of the protocol was unknown. In Barnette's opinion, the interviews of A.G. and E.G. were not properly conducted; the interviewers

4

asked leading questions, they did not explore alternative hypotheses, and they displayed confirmatory bias by failing to ask whether the alleged acts had happened. Barnette identified 60 questions asked during A.G.'s interview and 52 questions asked during E.G.'s interview that he felt were inappropriately leading or suggestive.

On cross-examination, the State attacked Barnette's qualifications, noting that his undergraduate degree was in English and theater, his master's degree was in counseling through the education department, and his doctorate degree was in school psychology. Barnette acknowledged that he was no longer active in at least two of the professional organizations identified on his CV and he was unaware whether some organizations in which he claimed membership still existed. As for the Sunflower House interviews, Barnette agreed on cross-examination that the interviewers had used some nonleading questions, although he had not mentioned them in his report. He also conceded that some of the leading questions he cited referred to disclosures that had been made minutes before in the interview. And he agreed that "[s]ome leading questions" are acceptable.

In rebuttal to Barnette's testimony, the State called Erin Miller Weiss, a forensic interviewer at Sunflower House. Weiss testified that at the time of the interviews in Geist's case, Sunflower House did not use the Finding Words or RATAC protocol; it most closely followed the National Children's Advocacy Center interview structure. Like Barnette, Weiss had reviewed A.G. and E.G.'s interviews, but she found the interviews "solid." According to Weiss, the interviewers allowed the children to narrate freely, they did not make assumptions, they asked the children to clarify statements in their own words, and they explored alternative hypotheses when appropriate. Weiss also testified that based on conducting over 1,200 forensic interviews, she disagreed with Barnette's assertion that most sexual assault is disclosed within a day or two of happening.

The district court filed its 11-page memorandum decision on January 17, 2019. The district court made detailed findings of facts and conclusions of law and found that

Magariel had "made a strategic decision to not retain Dr. Sisk and not to identify him as an expert witness." The district court also found that even if Magariel had presented expert testimony at trial criticizing the interview techniques used in this case, "there is no reasonable probability that a jury would believe that the interviewers' technique was leading or suggestive such that it influenced the recorded statements made by the child witnesses and their later testimony at trial." Thus, the district court found that "Geist was not unduly prejudiced by the decision not to call an expert witness at trial to challenge the Sunflower House interview technique or the manner in which the child victims were interviewed in this case."

The district court also rejected Geist's argument that Magariel was ineffective for failing to retain Sisk to rebut Spaniol's testimony, finding that "Spaniol's testimony was based upon her personal experience and was not offered to the jury as expert testimony." The district court also found that "Weiss' testimony defending the Sunflower House child forensic interview protocol was more credible than the criticisms being raised by Dr. Barnette." Finally, the district court noted that the trial evidence included evidence of "Geist's own actions" that supported the children's allegations, including the phone calls and postcards from Geist to his family after his arrest. The district court found that Geist had not shown that Magariel's performance was unconstitutionally deficient nor had he shown the prejudice required to warrant reversal of his convictions. Thus, the district court denied Geist's K.S.A. 60-1507 motion. Geist timely appealed the decision.

ANALYSIS

On appeal, Geist argues that the district court erred in denying his K.S.A. 60-1507 motion. He contends that Magariel did not gather sufficient information to make an informed decision about whether to retain an expert witness and so his decision not to do so cannot be excused as a strategic decision. Geist focuses on Magariel's failure to ask Sisk to review A.G. and E.G.'s interviews, which he asserts means that Sisk "could not

6

have possibly formed an adequately informed opinion" on the appropriateness of the interviews. Geist contends that if the jury had heard expert testimony challenging the interviewing techniques, it could have "rejected the interviews and acquitted" him.

The State responds that substantial evidence supports the district court's finding that Magariel's decision was strategic. The State also argues that failing to provide the interviews to Sisk for review was not insufficient investigation because Magariel's trial strategy did not include challenging the interviews. In any event, the State asserts that even if Magariel's decision not to hire Sisk was erroneous, Geist was not prejudiced by the decision, so this court need not reverse.

> "The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel, and denial of the right can lead to reversal of a jury verdict. Courts consider whether a reversible denial of the right occurred by applying a two-prong test stated by the United States Supreme Court in *Strickland* [*v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. A convicted defendant must first establish deficient performance by 'show[ing] that counsel's representation fell below an objective standard of reasonableness.' Then the defendant must show that the deficient performance prejudiced the defense.
>
> "After a full evidentiary hearing about an ineffective assistance of counsel claim under K.S.A. 60-1507, an appellate court reviews a district court's findings of fact and conclusions of law under a mixed standard of review. The appellate court examines the record and determines whether substantial competent evidence supports the district court's factual findings and determines whether the court's factual findings support its conclusions of law. The appellate court then reviews the district court's conclusions of law de novo. [Citations omitted.]" *Balbirnie v. State*, 311 Kan. 893, 897-98, 468 P.3d 334 (2020).

"Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell

within the broad range of reasonable professional assistance." *Brown v. State*, 58 Kan. App. 2d 808, 821, 475 P.3d 689 (2020), *petition for rev. filed* October 26, 2020. We must make "'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" 58 Kan. App. 2d at 821. "'The decisions on what witnesses to call . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his or her client.' . . . "'Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" [Citations omitted.]" *State v. Johnson*, 304 Kan. 924, 951, 376 P.3d 70 (2016). "[T]his court generally does not second-guess strategic decisions of counsel." *Breedlove v. State*, 310 Kan. 56, 65, 445 P.3d 1101 (2019).

As Geist notes, "[m]ere invocation of the word 'strategy' does not insulate the performance of a criminal defendant's lawyer from constitutional criticism." *Wilkins v. State*, 286 Kan. 971, 982, 190 P.3d 957 (2008). To make a sound strategic decision, defense counsel must conduct sufficient investigation to make an informed choice. 286 Kan. at 982. Geist argues that Magariel's decision not to call an expert witness on child interviewing techniques stemmed from insufficient investigation because Magariel did not provide Sisk with the children's interviews to review. Geist points out that Magariel might have chosen to call an expert witness "if he knew more than 60 of the interview questions asked were leading, inappropriate, suggestive questions," as Barnette testified at the K.S.A. 60-1507 hearing.

But Magariel did not base his decision not to call an expert witness solely on a belief that the interviews were conducted perfectly. As he testified at the K.S.A. 60-1507 hearing, Magariel knew that both victims had made allegations against Geist outside the Sunflower House interviews, he did not believe that the interviews were the most damaging evidence against Geist, and his defense strategy was discrediting the victims, not focusing on the interviews.

8

Geist relies on *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222 (2002), in which this court held that defense counsel in a child sex abuse case provided ineffective representation by failing to retain an expert witness. In *Mullins*, a defense attorney testified at the K.S.A. 60-1057 hearing "that the use of experts in this type of case was crucial and that fact was well known at the time of Mullins' criminal trial." 30 Kan. App. 2d at 717. The State did not controvert that testimony, nor did it present any evidence "of strategic reasons for counsel's failure to consult or procure an expert." 30 Kan. App. 2d at 717. In fact, Mullins' trial counsel testified that he "did not look into the possibility of hiring his own expert" and "[h]e could not recall looking into the possibility of hiring experts to conduct independent exams or to review the exams done by State's witnesses." 30 Kan. App. 2d at 714.

In contrast, at Geist's K.S.A. 60-1507 hearing, Margariel not only testified that he spoke with Sisk about what to look for when reviewing the interview recordings, he also testified about the various strategic reasons he chose not to retain an expert witness for trial. Unlike in *Mullins*, where the uncontroverted evidence at the K.S.A. 60-1507 hearing required a finding that trial counsel had failed to investigate retaining an expert or make a strategic decision to refrain from doing so, the evidence at Geist's hearing was enough to support the district court's finding that Magariel made a strategic decision not to retain an expert witness on child interviewing techniques. Moreover, despite Geist's reliance in his appellate brief on Barnette's testimony at the K.S.A. 60-1507 hearing that the interviewing techniques were worrisome, Weiss testified at the hearing that the interview techniques were solid, and the district court found Weiss' testimony more credible. And as an appellate court, we do not reevaluate witness credibility. *Shumway v. State*, 48 Kan. App. 2d 490, 496, 293 P.3d 772 (2013).

Finally, we note that even if Magariel provided objectively deficient representation by deciding not to retain an expert for trial, Geist has not met his burden to show that he was prejudiced. To prevail on his K.S.A. 60-1507 motion, Geist must show

9

"'that the decision reached would reasonably likely have been different absent the errors.'" *Balbirnie*, 311 Kan. at 899-900 (quoting *Strickland v. Washington*, 466 U.S. 668, 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). In this context, "a 'reasonable probability' means 'a probability sufficient to undermine confidence in the outcome.'" *Balbirnie*, 311 Kan. at 900.

At Geist's trial, even discounting the Sunflower House interviews, A.G. and E.G. both testified in detail about times when Geist molested them. The school counselor to whom A.G. reported that Geist was molesting her testified. The friend to whom E.G. reported testified. E.G. then disclosed the abuse to that friend's mother, who also testified at trial. During an interview with police, a recording of which was published to the jury, when confronted with A.G.'s allegations, Geist at first denied touching her but eventually said, "'If she said it happened, it happened.'" *Geist*, 2014 WL 801854, at *1. Moreover, when the detective asked Geist during the interview "whether he did it, Geist responded, 'Yes.'" 2014 WL 801854, at *1. And, as discussed above, the evidence at trial also included the postcards and phone calls while Geist was in custody.

Considering all this evidence, there is no reasonable probability that the jury would have acquitted Geist, even if Magariel had presented expert testimony that successfully challenged the Sunflower House interviews. The district court's findings in its memorandum decision are supported by substantial competent evidence in the record. Because Geist has shown neither that Magariel's representation fell below an objective standard of reasonableness nor that the deficiency prejudiced Geist, we conclude the district court did not err in denying Geist's K.S.A. 60-1507 motion.

Affirmed.